## No. 14-3037

### In the
# United States Court of Appeals
## for the Sixth Circuit

**JOSEPH J. PLATT**, *et al.*,

*Plaintiffs-Appellants*,

v.

**BOARD OF COMMISSIONERS ON GRIEVANCES
AND DISCIPLINE OF THE OHIO SUPREME COURT**, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati
Case No. 1:13-CV-435

**APPELLANTS' BRIEF**

CURT C. HARTMAN
THE LAW FIRM OF CURT C. HARTMAN
3749 FOX POINT COURT
AMELIA, OHIO 45102
(513) 752-2878
hartmanlawfirm@fuse.net

CHRISTOPHER P. FINNEY
FINNEY LAW FIRM LLC
4270 IVY POINTE BLVD., SUITE 225
CINCINNATI, OHIO 45245
TELEPHONE:  (513) 943-6655
chris@finneylawfirm.com

*Attorneys for Appellants*

## RULE 26.1(A) CORPORATE DISCLOSURE STATEMENT

Pursuant to 6th Cir. R. 26.1, Appellant Joseph J. Platt makes the following disclosure:

**Is either party a subsidiary or affiliate of a publicly owned corporation?**

No.

**Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?**

No.

  _/s/ Curt C. Hartman_____
*Counsel for Appellant Joseph J. Platt*


## RULE 26.1(A) CORPORATE DISCLOSURE STATEMENT

Pursuant to 6th Cir. R. 26.1, Appellant Platt for Judge Campaign Committee makes the following disclosure:

**Is either party a subsidiary or affiliate of a publicly owned corporation?**

No.

**Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?**

No.

  _/s/ Curt C. Hartman_____
*Counsel for Appellant*
*Coalition Platt for Judge Campaign Committee*

## RULE 26.1(A) CORPORATE DISCLOSURE STATEMENT

Pursuant to 6th Cir. R. 26.1, Appellant Mark W. Miller makes the following

disclosure:

**Is either party a subsidiary or affiliate of a publicly owned corporation?**

No.

**Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?**

No.

_/s/ Curt C. Hartman_____
*Counsel for Appellant Mark W. Miller*

# TABLE OF CONTENTS

**Corporate Affiliations / Financial Disclosure** ................................................... i

**Table of Contents** .................................................. iii

**Table of Authorities** ................................................ vi

**Jurisdictional Statement** ................................ 1

**Statement of Issue** ................................... 1

**Request for Oral Argument** .................................. 2

**Statement of the Case** .................................................. 2

**Statement of the Facts** ................................... 4

**Summary of Argument** ................................... 12

**Argument** ................................................... 13

    I.   When the First Amendment is implicated, the standard of review of the denial of a preliminary injunction is *de novo* .................................... 13

    II.  Because the burdens at the preliminary injunction stage track the burdens at trial, the government bears the burden of demonstrating with proper evidence, even at the preliminary injunction stage, the justification for the imposition of a content-based restriction upon core political speech............................................................ 14

        A.  The burdens at the preliminary injunction stage track the burdens at trial.............................................. 14

        B.  When the government only offers *ipse dixit* to justify a content-based restriction upon core political speech, it has not satisfied its evidentiary burden of demonstrating the constitutionality of its actions........................................................ 15

    III.  An injunction should issue enjoining the provisions of the Ohio Code of Judicial Conduct at issue herein to the extent Defendants seek to apply or enforce those provisions against judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates................................................................. 17

        A.  Plaintiffs-Appellants have a sufficient likelihood of success to warrant the issuance of a preliminary injunction............................. 20

**1.** All of the challenged provisions of the Ohio Code of Judicial Conduct are content-based restrictions on core political speech and constitute a prior restraint on speech ...... 21

    **a.** Rule 4.4(A) of the Ohio Code of Judicial Conduct: Prohibition on personal solicitation of campaign contributions ..................................................................... 22

    **b.** Rules 4.4(E), 4.4(F) & 4.4(G) of the Ohio Code of Judicial Conduct: Exclusion periods during which judicial campaign committees are prohibited from soliciting or receiving contributions ................................. 23

    **c.** Rules 4.1(A)(1) & 4.1(A)(2) of the Ohio Code of Judicial Conduct: Prohibition on publicly supporting other candidates for public office. ..................................... 24

**2.** Defendants did not satisfy their evidentiary burden of demonstrating that the challenged provisions of the Code of Judicial Content satisfy the requirements of strict scrutiny .... 25

    **a.** The putative justification for infringing First Amendment rights through the Ohio Code of Judicial Conduct. ........................................................... 26

    **b.** The evidence actually repudiates any putative justification offered by the Defendants to justify the restrictions upon judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates. ........................... 27

    **c.** The putative justification offered by the State of Ohio are not narrowly tailored to advance the putative compelling interests to justify the restrictions and prohibitions imposed by the provisions of the Ohio Code of Judicial Conduct at issue herein .......................... 36

        **(i)** In the context of judicial candidates who are not currently sitting as members of the judiciary or the campaign committees of such candidates, the putative compelling governmental interests are not actually advanced by the provisions of the Ohio Code of Judicial Conduct at issue herein ...... 37

iv

**(ii)**   Because any putative compelling governmental interests are concerned with interests associated with the integrity of sitting judges, by extending such restrictions to judicial candidates who are not (and may never be) members of the judiciary, the judicial canons are overinclusive .... 43

**(iii)**   Alternative less restrictive means already exist which sufficiently advance any putative compelling governmental interest with respect to the provisions of the Ohio Code of Judicial Conduct at issue herein .......................................... 45

**B.**   Plaintiffs, as well as other judicial candidates who are not sitting members of the judiciary, will suffer irreparable injury without the issuance of a temporary restraining order and preliminary injunction..................................... 48

**C.**   No third parties will be harmed if a preliminary injunction is issued enjoining the provisions of the Ohio Code of Judicial Conduct at issue herein as the public interest is always served by enjoining an unconstitutional law or regulation....................... 49

**IV.**   Because no evidentiary record could be developed to satisfy Defendants' burden of demonstrating the constitutionality of the provisions of the Ohio Code of Judicial Conduct at issue herein (at least as applied to judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates), this Court should direct the issuance of a permanent injunction. ........................... 51

**V.**   Conclusion ......................................... 52

**Certificate of Compliance** ............................... 54

**Certificate of Service** ..................................... 54

**Designation of Relevant District Court Documents** ...................................... 55

**Addendum** ................................................. 57

# TABLE OF AUTHORITIES

*Cases*

*Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*
(SMART), 698 F.3d 885 (6th Cir. 2012) ................................................. 14

*American Imaging Services, Inc. v. Eagle-Picher Indus., Inc.,*
963 F.2d 855 (6th Cir. 1992) ............................................................... 17-18

*Anderson v. Spear,*
356 F.3d 651 (6th Cir. 2004) ................................................................ 39-40

*Arkansas Right to Life State Political Action Committee v. Butler,*
29 F.Supp.2d 540 (W.D. Ark. 1998) ...................................................... 23, 39

*Ashcroft v. ACLU,*
542 U.S. 656 (2004) ........................................................................... 14

*Awad v. Ziriax,*
670 F. 3d 1111 (10th Cir. 2012) .......................................................... 27

*Bays v. City of Fairborn,*
668 F.3d 814 (6th Cir. 2012) ............................................................... 14, 43

*Beer v. Griffith,*
54 Ohio St.2d 440, 377 N.E.2d 775 (1978) .......................................... 30

*Brinkman v. Budish,*
692 F. Supp.2d 855 (S.D. Ohio 2010) ................................................... 47

*Buckley v. Amer. Const. Law Found.,*
525 U.S. 182 (1999) ........................................................................... 20

*Burson v. Freeman,*
504 U.S. 191 (1992) ........................................................................... 21, 27

*Califano v. Yamasaki,*
442 U. S. 682 (1979) .......................................................................... 50

*Capobianco v. Summers,*
377 F.3d 559 (6th Cir. 2004) ............................................................... 18

*Caperton v. A. T. Massey Coal Co.,*
556 U.S. 868 (2009) ........................................................................... 38-39

*Carey v. Wolnitzek,*
614 F.3d 189 (6th Cir. 2010) ............................................................... passim

*Citizens for Tax Reform v. Deters,*
518 F.3d 375 (6th Cir. 2008) ............................................................... 20, 25

*Connection Distrib. Co. v. Reno,*
154 F.3d 281 (6th Cir. 1998) ............................................................... 49

*Consol. Edison Co. of New York, Inc. v. Pub. Serv. Comm'n of New York,*
447 U.S. 530 (1980) ........................................................................... 28

*Contractors Ass'n v. City of Philadelphia*,
    6 F.3d 990 (3d Cir 1993) ........................................................ 28

*Déjà vu of Nashville, Inc. v. Metropolitan Gov't of Nashville & Davidson
    County, Tenn.*, 274 F.3d 377 (6th Cir. 2001) ........................................ 50

*Diginet, Inc. v. Western Union ATS, Inc.*,
    958 F.2d 1388 (7th Cir. 1992) .............................................. 51

*Edenfield v. Fane*,
    507 U.S. 761 (1993) ............................................................ 28
*Elrod v. Burns*,
    427 U.S. 347 (1973) ............................................................ 49

*Federal Election Commission v. Massachusetts Citizens for Life*,
    479 U.S. 238 (1986) ...................................................... 43, 51
*Frisby v. Schultz*,
    487 U.S. 474 (1988) ............................................................ 43

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*,
    23 F.3d 1071 (6th Cir. 1994) .................................................. 50
*G.K. Ltd. Travel v. City of Lake Oswego*,
    436 F.3d 1064 (9th Cir. 2006) .............................................. 37
*Gonzales v. O Centro Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006) ............................................................ 14

*Horina v. City of Granite City, Ill.*,
    538 F.3d 624 (7th Cir. 2008) .............................................. 28
*Hunter v. Ohio Bur. of Workers' Comp.*,
    Ohio Sup. Ct. Case No. 12-AP-096 ........................................ 33

*In re DeLorean Motor Co.*,
    755 F.2d 1223, 1229 (6th Cir. 1985) .................................... 18
*In re Disqualification of Bryant*,
    117 Ohio St.3d 1251, 1252, 885 N.E.2d 246, 2006-Ohio-7227 ........... *passim*
*In re Disqualification of Burnside*,
    113 Ohio St.3d 1211, 863 N.E.2d 617, 2006-Ohio-7223 ................ 41
*In re Disqualification of Horvath*,
    105 Ohio St.3d 1247, 826 N.E.2d 305, 2004-Ohio-7356 ............... 40
*In re Disqualification of Kessler*,
    117 Ohio St.3d 1233, 884 N.E.2d 1086, 2005-Ohio-715 ............... *passim*
*In re Disqualification of Maloney*,
    91 Ohio St.3d 1204, 741 N.E.2d 133, 2000-Ohio-201 ................. *passim*

*In re Disqualification of McMonagle*,
74 Ohio St.3d 1273, 657 N.E.2d 1368 (1995) ...................................... 34-35
*In re Disqualification of Osowik*,
117 Ohio St.3d 1237, 884 N.E.2d 1089, 2006-Ohio-7224 ................... 30-31
*In re Disqualification of Russo*,
81 Ohio St.3d 1210, 688 N.E.2d 515, 1997-Ohio-18 (1997) ............... 32

*Kruse v. City of Cincinnati*,
142 F.3d 907 (6th Cir. 1998) ................................................. 26

*Lac Vieux Desert Band v. Michigan Gaming Control Board*,
172 F.3d 397 (6th Cir. 1999) ................................................. 25
*Lewis v. Casey*,
518 U.S. 343 (1996) .............................................................. 50
*Levin v. Husted*,
689 F.3d 543 (6th Cir. 2012) ................................................. 15, 16
*Long Beach Area Chamber of Commerce v. City of Long Beach*,
603 F.3d 684 (9th Cir. 2010) ................................................. 26
*Los Angeles v. Preferred Communications, Inc.*,
476 U.S. 488 (1986) .............................................................. 27

*McGlone v. Bell*,
681 F.3d 718 (6th Cir. 2012) ................................................. 13
*McIntyre v. Ohio Elections Comm'n*,
514 U.S. 334 (1995) .............................................................. 21, 25
*McPherson v. Michigan High Sch. Athletic Ass'n*,
119 F.3d 453 (6th Cir. 1997) (*en banc*) ............................... 17
*Meyers v. Grant*,
486 U.S. 414 (1988) .............................................................. 20
*Middleton v. City of Flint*,
92 F.3d 396 (6th Cir. 1996) ................................................. 25
*Miller v. City of Cincinnati*,
622 F.3d 524 (6th Cir. 2010) ................................................. 50
*Missouri* v. *Jenkins*,
515 U. S. 70 (1995) .............................................................. 49

*NAACP v. Button*,
371 U.S. 415 (1963) .............................................................. 20
*Newsom v. Norris*,
888 F.2d 371 (6th Cir. 1989) ................................................. 48

*Nightclubs v City of Paducah*,
   202 F.3d 884 (6th Cir. 2000) ............................................................... 25

*Ohio Citizen Action v. City of Englewood*,
   671 F.3d 564 (6th Cir. 2012) ......................................................... 14, 26

*Pagan v. Fruchey*,
   492 F.3d 766 (6th Cir. 2007)(*en banc*) ........................................ 12, 28

*Republican Party of Minn. v. White*,
   536 U.S. 765 (2002) ............................................................... *passim*

*Republican Party of Minn. v. White*,
   416 F.3d 738 (8th Cir. 2005) (*en banc*) ............................................. 37

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984) ........................................................................... 20

*Rubin v. Coors Brewing Co.*,
   514 U.S. 476 (1995) ........................................................................... 45

*Saieg v. City of Dearborn*,
   641 F.3d 727 (6th Cir. 2011) ............................................................. 19

*Siegel v LePore*,
   234 F.3d 1163 (11th Cir. 2000) ......................................................... 51

*State ex rel. Maurer v. Sheward*,
   71 Ohio St.3d 513, 644 N.E.2d 369, 1994-Ohio-496 ..................... 33-34

*Suster v. Marshall*,
   951 F.Supp. 693 (N.D. Ohio 1996) ................................................... 46

*Timmons v. Twin Cities Area New Party*,
   520 U.S. 351 (1997) ........................................................................... 25

*United States v. Playboy Entertainment Group, Inc.*,
   529 U.S. 803 (2000) ............................................................... *passim*

*Weaver v. Bonner*,
   309 F.3d 1312 (11th Cir. 2002) ......................................................... 23

*Wersal v. Sexton*,
   674 F.3d 1010 (8th Cir. 2002) ..................................................... 24, 25


### Statutes and Rules

United States Constitute, amend. I ............................................... *passim*

Ohio Constitution, art. IV, sec. 5(C) ................................................. 30

28 U.S.C. § 1292(a)(1) .......................................................................... 1

28 U.S.C. § 1331 ................................................................................... 1

28 U.S.C. § 1343(a)(4) ........................................................ 1

42 U.S.C. § 1983.................................................................. 1, 11
42 U.S.C. §2000cc ............................................................ 1

6 Cir. R. 34(a) .................................................................... 2

ALABAMA CODE § 12-24-1 ............................................... 47-48

OHIO REV. CODE § 3.23 ..................................................... 5, 23
OHIO REV. CODE § 2701.12(A) .......................................... 19
OHIO REV. CODE § 3513.05 ............................................... 7
OHIO REV. CODE § 3517.01(B)(1) ..................................... 4
OHIO REV. CODE § 3517.081(A) ........................................ 4

### Codes of Judicial Conduct / Ethical Rules

Alabama Canons of Judicial Ethics, Canon 7(B)(4)(a)................................... 47

N.C. Code of Judicial Conduct, Canon 7(B) .................................. 47

Ohio Code of Judicial Conduct, Application of the Code ............................ 4
Ohio Code of Judicial Conduct, Rule 4.1(A) ................................. 10-11
Ohio Code of Judicial Conduct, Rule 4.1(A)(1) ........................... *passim*
Ohio Code of Judicial Conduct, Rule 4.1(A)(2) ........................... *passim*
Ohio Code of Judicial Conduct, Rule 4.4(A) ................................. *passim*
Ohio Code of Judicial Conduct, Rule 4.4(E) ................................. *passim*
Ohio Code of Judicial Conduct, Rule 4.4(F) ................................. *passim*
Ohio Code of Judicial Conduct, Rule 4.4(G) ................................. *passim*
Ohio Code of Judicial Conduct, Rule 4.4(H)(1) ........................... 7
Ohio Code of Judicial Conduct, Rule 4.4(I) ................................. 9
Ohio Code of Judicial Conduct, Rule 4.4(J) ................................. 9
Ohio Code of Judicial Conduct, Rule 4.4(K) ................................. 9
Ohio Code of Judicial Conduct, Rule 4.4(L) ................................. 9
Ohio Code of Judicial Conduct, Rule 4.4(M) ............................... 9
Ohio Code of Judicial Conduct, Rule 4.4(N) ............................... 9
Ohio Code of Judicial Conduct, Rule 4.6(F) ................................. 4

### Advisory Opinions

Ohio Board of Comm'rs on Grievances & Discipline,
    Advisory Opin. No. 97-6 ........................................................ 7

## JURISDICTIONAL STATEMENT

The District Court's subject matter jurisdiction in this case existed pursuant to 28 U.S.C. § 1331 as this civil action arose under the Constitution and laws of the United States; and pursuant to 28 U.S.C. § 1343(a)(4) in that this civil action sought to secure equitable relief under Acts of Congress, specifically 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc.

This Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) as the decision being appealed is a refusal by the district court's to issue a preliminary injunction.  (Opinion & Order, RE23, PageID#340-351.)  Said decision of the district court was entered on January 6, 2014, and a timely appeal was filed that same day.  (Notice of Appeal, RE24, PageID# 352.)

## STATEMENT OF ISSUE

As the government officials responsible for the adoption and/or enforcement of the challenged regulations that ban and restrict core political speech, have Defendants-Appellees satisfied their burden with appropriate evidence of proving the constitutionality of its actions so as to preclude injunctive relief.

## REQUEST FOR ORAL ARGUMENT

Pursuant to 6 Cir. R. 34(a), Appellants request for expedited oral argument. This case involves important issues going directly to the ability of candidates for public office to engage in core political speech which are afforded the greatest protection under the First Amendment. The infringement of such speech continues absent expedited consideration and protection from this Court.

## STATEMENT OF THE CASE

On June 20, 2012, Plaintiffs Joseph J. Platt, the Platt for Judge Campaign Committee and Mark W. Miller filed a verified complaint against numerous entities or individuals with varying roles and responsibilities relating to the adoption and enforcement of the Ohio Code of Judicial Conduct. (Verified Complaint with exhibits, RE1 to RE1-2, PageID#1-56.) Plaintiffs sought declaratory and injunctive relief concerning six distinct provisions of the Ohio Code of Judicial Conduct, claiming said provisions violated the First Amendment rights of *judicial candidates in the State of Ohio who were not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates.*

Concomitant with the Complaint, Plaintiffs also filed a Motion for Temporary Restraining Order and Preliminary Injunction (Motion for

TRO/Preliminary Injunction, RE2, PageID#58-61), together a memorandum in support (Memorandum in Support, RE2-1, PageID#62-111) and additional supportive evidence (Hartman Declaration with exhibits, RE3 to RE3-7, PageID#112-137).  Following briefing on the motion (Defendants' Memorandum in Opposition,  RE12, PageID#151-168; Plaintiffs' Reply Memorandum in Support, RE13, PageID#169-183), together with additional documents submitted by agreement of the parties (Defendants' Amended Notice of Filing, together with exhibits, RE15 to RE15-2,PageID#220-255; Plaintiffs' Notice of Filing, together with exhibits, RE16 to RE16-9, PageID#256-272), the District Court heard oral argument on the pending motion on August 21, 2013.  (Transcript of Oral Argument, RE20, PageID#284-335.)

Ultimately, on January 6, 2014, the District Court issued an order and opinion wherein it refused to issue a preliminary injunction with respect to any of the six provisions of the Ohio Code of Judicial Conduct being challenged. (Opinion & Order, RE23, PageID#340-351.)  That same day, Plaintiffs appealed the refusal of the district court to issue the injunction.  (Notice of Appeal, RE24, PageID# 352.)

## STATEMENT OF THE FACTS

## A.

Joseph Platt is an Ohio attorney who desires to seek election to a judicial office.    (Verified Complaint ¶¶52 & 54, RE1, PageID#20.)    Thus, Mr. Platt authorized the establishment and registration of the Platt for Judge Campaign Committee, with Mark Miller serving as its treasurer.  (Verified Complaint ¶61 & Exh. B, RE1, PageID#21 & 56.)    The formation and registration of such a campaign committee was necessary before Mr. Platt could solicit, raise or spend any money in support of his effort.  *See* Ohio Rev. Code § 3517.01(B)(1); Ohio Rev. Code § 3517.081(A); Ohio Code of Judicial Conduct, Rule 4.4(A).

As a result of the foregoing efforts by Mr. Platt, including the formation and registration of the Platt for Judge Campaign Committee, Mr. Platt is considered to be a "judicial candidate" and, thus, subject to the restrictions of Canon 4 of the Ohio Code of Judicial Conduct.  *See* Ohio Code of Judicial Conduct, Application of the Code ("Canon 4 applies to judicial candidates"); Ohio Code of Judicial Conduct, Rule 4.6(F)("judicial candidate" means "a person who has…declared or filed as a candidate for judicial office with the election authority.…"); (Answer, RE19 ¶64, PageID#279.)  Yet, if Mr. Platt were ultimately to be elected judge, and like every individual assuming the bench in Ohio, he would, prior to assuming office, take the following oath of office:

to support the constitution of the United States and the constitution of this state, to administer justice without respect to persons, and faithfully and impartially to discharge and perform all the duties incumbent on him as such judge, according to the best of his ability and understanding.

Ohio Rev. Code § 3.23.

However, notwithstanding the fact that Mr. Platt is not presently sitting as a member of the judiciary in the State of Ohio and that, if elected, he would take an oath "to administer justice without respect to persons" and "[to] faithfully and impartially []discharge and perform all the duties incumbent on him as [a] judge," both Mr. Platt and his campaign committee have severe and absolute restrictions imposed upon them by certain provisions of the Ohio Code of Judicial Conduct by the simple fact that Mr. Platt is a "judicial candidate" – and these restrictions go directly to the ability of Mr. Platt, his campaign committee and his supporters to engage in core political speech and association protected by the First Amendment.

**B.**

**1.**

Rule 4.4(A) of the Ohio Code of Judicial Conduct provides that:

A judicial candidate shall not personally solicit campaign contributions, except as expressly authorized in this division, and shall not personally receive campaign contributions.… A judicial candidate may solicit campaign contributions in the following manner:

5

(1) A judicial candidate may make a general request for campaign contributions when speaking to an audience of twenty or more individuals;

(2) A judicial candidate may sign letters soliciting campaign contributions if the letters are for distribution by the judicial candidate's campaign committee and the letters direct contributions to be sent to the campaign committee and not to the judicial candidate;

(3) A judicial candidate may make a general request for campaign contributions via an electronic communication that is in text format if contributions are directed to be sent to the campaign committee and not to the judicial candidate.

Thus, pursuant to Rule 4.4(A), Mr. Platt is expressly prohibited from engaging in one-on-one solicitations or any other personal solicitations for campaign funds even though he is not presently sitting as a member of the judiciary in the State of Ohio.

And the restrictions upon Mr. Platt and his campaign committee also extend to restricting the period of time in which his campaign committee could even solicit or receive contributions.  Rule 4.4(E) of the Ohio Code of Judicial Conduct provides that:

The campaign committee of a judicial candidate may begin soliciting and receiving contributions no earlier than one hundred twenty days before the first Tuesday after the first Monday in May of the year in which the general election is held. If the general election is held in 2012 or any fourth year thereafter, the campaign committee of a judicial candidate may begin soliciting and receiving contributions no earlier than one hundred twenty days before the first Tuesday after the first Monday in March of the year in which the general election is held. Except as provided in divisions (F) and (G) of this rule, the solicitation and receipt of contributions may continue until one hundred twenty days after the general election.

Because the filing deadline for a declaration of candidacy and petition with the appropriate election official is ninety-days before the primary election, *see* Ohio Rev. Code § 3513.05, Mr. Platt and his campaign committee will only have a 30-day window in which to raise funds from supporters before having to file his petition for any primary election.[1]  Thus, because Rule 4.4(E) imposes an absolute prohibition on seeking or raising funds from potential contributors prior to that time,[2] Mr. Platt and his campaign committee lacked the ability to meaningfully assess the viability of his candidacy, as well as to promote his candidacy prior to that time.  In contrast, though, the campaign committee of an incumbent judge may retain campaign funds from a prior election and, throughout the entire six-year term of the sitting judge, spend such funds in order to promote the incumbent judge, including his or her re-election. *See* Board of Comm'rs on Grievances & Discipline, Advisory Opin. No. 97-6 ("an incumbent judge's judicial campaign committee may expend retained campaign funds outside the [Rule 4.4(E)] time period for soliciting and receiving campaign funds").

---

[1]  Ohio stands alone in the way it fills vacancies on its state court benches: candidates first compete in a partisan primary and then in a nonpartisan general election

[2]  Rule 4.4(H)(1) does permit a judicial candidate, "[n]ot more than ninety days prior to the commencement of the one hundred twenty-day fundraising period described in division (E) of this rule, [to] contribute personal funds to his or her campaign committee."

7

And the temporal limitation on the ability of the campaign committee of a judicial candidate is further extended even in the event such candidate is defeated in the election, withdraws or dies.  For upon the occurrence of any one of those events, the campaign committee only has 120 days in which to continue to raise funds; after that period, the committee cannot engage in any further efforts to raise funds for any purpose, including the retirement of debt.  Specifically, Rule 4.4(F) of the Ohio Code of Judicial Conduct provides (with emphasis added):

> If the candidate is defeated prior to the general election, the solicitation and receipt of contributions may continue until such time as the contributions solicited are sufficient to pay the campaign debts and obligations of the judicial candidate incurred on or before the date of the primary election, plus the costs of solicitation incurred after the date of the primary election, *but in no event shall the solicitation or receipt of contributions continue beyond one hundred twenty days after the date of the election at which the defeat occurred*. Notwithstanding division (J) of this rule, the limits on contributions in a primary election period shall apply to any contributions solicited or received by the campaign committee of the defeated judicial candidate after the date of the primary election.

And Rule 4.4(G) of the Ohio Code of Judicial Conduct mandates that (with emphasis added):

> In the case of the death or withdrawal of a judicial candidate, the solicitation and receipt of contributions may continue until such time as the contributions solicited are sufficient to pay the campaign debts and obligations of the judicial candidate incurred on or before the date of death or withdrawal, plus the costs of solicitation incurred after the date of death or withdrawal, *but in no event shall the solicitation or receipt of contributions continue beyond one hundred twenty days after the date of death or withdrawal*.

Thus, when assessing whether to even pursue a candidacy for a judicial office, a person desiring to run for a judicial office, including Mr. Platt, must not only take into account the limited time period in which funds may be raised in advance of such campaign, but in the event that he or she is defeated in the election, withdraws or dies, fundraising to pay off any outstanding debt or candidate loans is restricted for 120 days (even though the individual is not actively seeking election to a judicial office). (Verified Complaint ¶73, RE1, PageID#23.)

**2.**

In addition to the restrictions on the ability to personally solicit campaign funds, as well as the temporal limitations on the raising of such funds, Mr. Platt and his campaign committee are further constrained in the ability to raise funds by contribution limits set forth in Rule 4.4(I) to 4.4(N) of the Ohio Code of Judicial Conduct.[3] Depending upon the specific judicial office sought, the currently applicable contribution limits are:

---

[3] This case does not challenge the constitutionality of these contribution limits. Instead, the contribution limits are pertinent as they relate to the constitutional validity *vel non* of the absolute prohibition against the personal solicitation of contributions by judicial candidates who are not presently sitting as members of the judiciary in the State of Ohio, as well as the associated temporal limitations, and whether such prohibitions and restrictions satisfy the constitutional standards of strict scrutiny. For in assessing the validity of the putative compelling interest supposedly being served by these restrictions and whether they are narrowly tailored, the Court must also be mindful and appreciative of the fact that contributions limits already exist, as well as the amounts of such limits.

**CONTRIBUTION LIMITS**
**Effective January 1, 2013**

| CANDIDATE FOR: | INDIVIDUAL | | ORGANIZATION | | POLITICAL PARTY | |
|---|---|---|---|---|---|---|
| | Primary* | General | Primary* | General | Primary* | General |
| Supreme Court Chief Justice and Justice | $3,600 | $3,600 | $6,700 | $6,700 | $181,600 | $333,000 |
| Court of Appeals | $1,200 | $1,200 | $3,600 | $3,600 | $36,300 | $72,700 |
| Common Pleas, Municipal, and County Court more than 750,000 | $600 | $600 | $3,600 | $3,600 | $36,300 | $72,700 |
| 750,000 or less | $600 | $600 | $3,600 | $3,600 | $30,300 | $60,500 |

*Primary limits apply only if the judicial candidate has a contested primary. If there is no contested primary, the general election limits apply throughout the permissible fundraising period.

**3.**

And beyond the foregoing prohibitions and restrictions imposed upon Mr. Platt and his campaign committee, the Ohio Code of Judicial Conduct imposes other absolute restrictions upon Mr. Platt's ability to engage political speech. Because Mr. Platt is now considered to be a "judicial candidate", Mr. Platt is also prohibited from undertaking any actions publicly supportive of any other candidate for public office even though Mr. Platt is not presently sitting as a member of the judiciary in the State of Ohio. For Rule 4.1(A) of the Ohio Code of Judicial Conduct mandate that:

A judge or judicial candidate shall not do any of the following:
. . .
(2) Make speeches on behalf of a political party or another candidate for public office;

10

(3) Publicly endorse or oppose a candidate for another public
    office;

Notwithstanding the fact that Mr. Platt has long been involved in local politics,

including his local school district, and he desires to publicly support and aid other

candidates seeking election to public office (including non-partisan offices),

(Verified Complaint ¶¶86-77, RE1, PageID#25-26), because Mr. Platt is a "judicial

candidate", he is precluded from involving himself in any such political activity.

## C.

In light of the direct and absolute restrictions that the foregoing provisions of

the Ohio Code of Judicial Conduct impose upon the rights secured by the First and

Fourteenth Amendments to the United States Constitution, including the right to

free expression, the right of association, the right to due process of law, and the

right to equal protection of the law, Plaintiffs commenced this civil rights actions

pursuant to 42 U.S.C. 1983, seeking, *inter alia*, the issuance of an injunction to

enjoin the enforcement of the foregoing provisions to the extent such provision are

or may be applied *to judicial candidates in the State of Ohio who are not presently

sitting as members of the judiciary in the State of Ohio or the campaign

committees of such judicial candidates*.  Defendants, who are named in their

official capacity, are those responsible, to varying degrees, for the adoption or

enforcement of grievances that allege a violation by a judicial candidate of Canon

4 of the Code of Judicial Conduct, including the provisions challenged herein. (Verified Complaint ¶9, RE1, PageID#8; Answer ¶9, RE1, PageID#276.)

## SUMMARY OF ARGUMENT

As the government officials responsible for the adoption and/or enforcement of the challenged regulations that ban and restrict core political speech, Defendants-Appellees have the burden of justifying the absolute and severe restrictions imposed upon the First Amendment because: (i) the burden at the preliminary injunction stage of litigation tracks the burden at trial; and (ii) once a plaintiff satisfies the initial burden of making a colorable claim that his or her First Amendment rights have been infringed or are threatened with infringement, the burden then shifts to the government to justify the ban or restriction upon First Amendment rights  But Defendants-Appellees have not satisfied and cannot satisfy their burden as they have failed to "come forward with some quantum of evidence, beyond [their] own belief in the necessity for regulation, that the harms [they] seek[] to remedy are concrete and that [their] regulatory regime advances the stated goals." *Pagan v. Fruchey*, 492 F.3d 766, 771 (6th Cir. 2007)(*en banc*).

And even considering the merits of the *ipse dixit* justifications proffered by the Defendants-Appellees, when contrasted with, *inter alia*, prior pronouncements on behalf of the State of Ohio that it "presume[s]…that judges are able to set aside

any partisan interests once they have assumed judicial office and have taken an oath to decide cases on the facts and the law before them," *In re Disqualification of Bryant*, 117 Ohio St.3d 1251, 1252, 885 N.E.2d 246, 2006-Ohio-7227, and "assume[s] that judges can remain impartial when an attorney or party who voiced opposition to the election of the judge appears in the judge's courtroom," *In re Disqualification of Kessler*, 117 Ohio St.3d 1233, 884 N.E.2d 1086, 2005-Ohio-7151 ¶4, and that "financial contributions and other forms of support during a judicial campaign do not raise a reasonable question regarding a judge's impartiality," *In re Disqualification of Maloney*, 91 Ohio St.3d 1204, 741 N.E.2d 133, 2000-Ohio-201, there is no records that could be developed by which the judicial canons at issue meet constitutional muster, especially when applied against *judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates.*

**ARGUMENT**

## I.    When the First Amendment is implicated, the standard of review of the denial of a preliminary injunction is *de novo*.

In general, this Court reviews "a district court's denial of a motion for preliminary injunction for abuse of discretion." *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012). However, "the standard of review for a district court decision regarding a preliminary injunction with First Amendment implications is *de novo*."

13

*Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012); *accord Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp. (SMART)*, 698 F.3d 885, 889–90 (6th Cir. 2012).

**II. Because the burdens at the preliminary injunction stage track the burdens at trial, the government bears the burden of demonstrating with proper evidence, even at the preliminary injunction stage, the justification for the imposition of a content-based restriction upon core political speech.**

**A.    The burdens at the preliminary injunction stage track the burdens at trial.**

At the outset, it is important for the Court to appreciate that "the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Beneficente Uniao do Vegetal,* 546 U.S. 418, 429 (2006); *see also Ashcroft v. ACLU,* 542 U.S. 656, 666 (2004)(in a preliminary injunction case, "[a]s the government bears the burden of proof on the ultimate question of COPA's constitutionality, [the plaintiffs challenging COPA] must be deemed likely to prevail unless the government has shown that [the plaintiffs'] proposed less restrictive alternatives are less effective than COPA").  For "[w]hen the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."  *United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 816 (2000); *accord Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 571 (6th Cir. 2012)("[t]he governmental entity that enacts the regulation bears the burden of establishing each element of the analysis").

14

Thus, as even the Defendants acknowledged before the District Court:

> in the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction.

(Defendants' Memorandum in Opposition, RE12, at 5, PageID#155 (quoting *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011).)  And they have not taken issue as to whether Plaintiffs made a colorable claim that their First Amendment rights have been infringed.  Thus, the issue in this case simply becomes whether the Defendants satisfied with proper evidence their burden of demonstrating the constitutionality of the judicial canons at issue herein.

**B.    When the government only offers *ipse dixit* to justify a content-based restriction upon core political speech, it has not satisfied its evidentiary burden of demonstrating the constitutionality of its actions.**

In *Levin v. Husted*, 689 F.3d 543 (6th Cir. 2012), this Court reiterated that, when defending the constitutionality of a content-based restriction on speech, the government must actually present evidence directly establishing the constitutionality of the particular restriction being challenged.  *Levin* involved a First Amendment challenge to an Ohio statute which prohibited the attorney general or a prosecuting attorney from accepting campaign contributions from Medicaid providers or any person with an ownership interest in a Medicaid provider.  This Court rejected the effort, similar to the Defendants herein, of

relying upon conclusory statements and *ipse dixit* to establish the constitutionality of the challenged provision:

> The [state's] theory in support of the challenged contribution ban is that § 3599.45 prevents corruption. That interest, of course, is one that the courts have recognized as important. But to demonstrate that a contribution limit furthers an interest important enough to suppress "the freedoms of political expression and political association[,]" a state must do more than merely *recite* a general interest in preventing corruption. What *Buckley* requires is a demonstration, not a recitation.
> What the state must do, instead, is demonstrate *how* its contribution ban furthers a sufficiently important interest.

*Id.* at 547.

But in defending the provisions of the Ohio Code of Judicial Conduct at issue herein, the Defendants simply relied upon *ipse dixit*, not evidence; they have not satisfied and cannot satisfy the requirements of strict scrutiny vis-à-vis these provisions. Furthermore, even beyond the lack of evidence offered by the Defendants, Plaintiffs presented evidence that irrefutably repudiates such *ipse dixit*. *See* pages 30-36 & 40-41, *infra.*

**III. An injunction should issue enjoining the provisions of the Ohio Code of Judicial Conduct at issue herein to the extent Defendants seek to apply or enforce those provisions against judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates.**

Because (i) Defendants  failed to offer any evidence in defense of the constitutionality of the provisions of the Ohio Code of Judicial Conduct at issue herein; and/or (ii) as content-based restrictions upon the exercise of core political speech, such provisions cannot satisfy the requirements of strict scrutiny, the District Court should have issued a preliminary injunction enjoining Defendants from enforcing such provisions against *judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates.*

Courts generally evaluate four factors when considering whether to issue a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury if such relief is not granted; (3) whether the granting of such relief would result in substantial harm to third parties; and (4) whether the public interest would be served through such relief.  *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*).  These four factors "simply guide the discretion of the court; they are not meant to be rigid and unbending requirements" and, thus, they are "to be balanced and not prerequisites that must be satisfied." *American*

*Imaging Services, Inc. v. Eagle-Picher Indus., Inc.,* 963 F.2d 855, 859 (6th Cir. 1992). Additionally, a preliminary injunction is still appropriate when the plaintiff shows "serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant," *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)(quoting *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)), or if "the merits present a sufficiently serious question to justify further investigation." *Id.* at 1330. But ultimately, "the first factor is frequently dispositive in the First Amendment context." *Capobianco v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004).

In assessing whether an injunction should issue, this Court should be mindful of the admonitions of Justices Kennedy and O'Connor:

> [A State] may choose to have an elected judiciary. It may strive to define those characteristics that exemplify judicial excellence. It may enshrine its definitions in a code of judicial conduct. It may adopt recusal standards more rigorous than due process requires, and censure judges who violate these standards. What [a State] may not do, however, is censor what the people hear as they undertake to decide for themselves which candidate is most likely to be an exemplary judicial officer. Deciding the relevance of candidate speech is the right of the voters, not the State.
> . . .
> . . . *The State cannot opt for an elected judiciary and then assert that its democracy, in order to work as desired, compels the abridgment of speech.*

*Republican Party of Minn. v. White*, 536 U.S. 765, 794-95 (2002)(Kennedy, J., concurring).

> [T]he State's claim that it needs to significantly restrict judges' speech in order to protect judicial impartiality is particularly troubling. If the State has a problem with judicial impartiality, it is largely one the State brought upon itself by continuing the practice of popularly electing judges.

*Id.* at 792 (O'Connor, J., concurring).

For, as set forth above, this case does not even involve a challenge to the restrictions upon the speech or associational rights of those who are presently sitting as judges; instead, this case is limited to the constitutional validity of the absolute or severe restrictions upon the speech and associational rights of those judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates. For:

> *[t]he State may not regulate the content of candidate speech merely because the speakers are candidates. This case does not present the question whether a State may restrict the speech of judges because they are judges – for example, as part of a code of judicial conduct.*

*Id.* at 796 (Kennedy, J., concurring)(emphasis added). The foregoing quote of Justice Kennedy precisely frames the issue in this case.

While certain putative compelling governmental interests may *arguendo* justify restrictions on the First Amendment rights of sitting judges *qua* sitting judges, any such interest cannot constitutionally justify the same restrictions on the First Amendment rights of judicial candidates who are not presently sitting members of the judiciary (and may never be members of the judiciary) or the

19

campaign committees of such judicial candidates. *See Carey v. Wolnitzek*, 614 F.3d 189, 201 (6th Cir. 2010)("[t]he canon's first problem is a *White* problem – that it suppresses too much speech to advance the government's interest"). For as the Supreme Court has cautioned "broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." *NAACP v. Button,* 371 U.S. 415, 438 (1963).

### A. Plaintiffs-Appellants have a sufficient likelihood of success to warrant the issuance of a preliminary injunction.

The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend 1. "The Fourteenth Amendment extends these prohibitions against the States." *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 379 (6th Cir. 2008). And "implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984).

First Amendment protection is "at its zenith" for "core political speech" which involves "interactive communication concerning political change." *Buckley v. Amer. Const. Law Found.*, 525 U.S. 182, 186-87 (1999); *accord Meyers v. Grant*, 486 U.S. 414, 422 (1988). And a candidate's speech during an election

campaign "occupies the core of the protection afforded by the First Amendment."
*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995).

As developed below, the provisions of the Ohio Code of Judicial Conduct at issue in this case: (i) constitute content-based restrictions upon the exercise of First Amendment rights; and (ii) operate as a severe, *i.e.*, an absolute, restriction upon the exercise of First Amendment rights. For "[w]hether individuals may exercise their free speech rights . . . depends entirely on whether their speech is related to a political campaign. . . . [The Supreme Court] has held that the First Amendment's hostility to content-based regulation extends not only to a restriction on a particular viewpoint, but also to a prohibition of public discussion of an entire topic." *Burson v. Freeman,* 504 U.S. 191, 197 (1992).

> **1. All of the challenged provisions of the Ohio Code of Judicial Conduct are content-based restrictions on core political speech and constitute a prior restraint on speech.**

It should be beyond cavil that the challenged provisions of the Ohio Code of Judicial Conduct constitute content-based restrictions on speech, as well as constituting a prior restraint on speech. For ease of reference, the six provisions of the Ohio Code of Judicial Conduct at issue can readily be categorized into three distinct categories: (i) the absolute prohibition on the personal, one-to-one solicitation for campaign contributions; (ii) the exclusion period during which judicial campaigns committees are absolutely and unconditionally prohibited from

soliciting or receiving any campaign contributions;[4] and (iii) the absolute prohibition on publicly supporting or opposing any other candidate for public office.

> **a. Rule 4.4(A) of the Ohio Code of Judicial Conduct: Prohibition on personal solicitation of campaign contributions.**

In *Carey v. Wolnitzek*, 614 F.3d 189 (6th Cir. 2010), this Court concluded that a judicial canon that restricted or prohibited the solicitation of campaign funds constituted a content-based restriction on speech, declaring that such a canon:

> censor[s] speech based on its content in the most basic of ways: . . . [it] prevent[s] candidates from asking for support in some ways (campaign funds) but not others (a vote, yard signs). The canon[] refer[s] directly to, and [is] "justified with[ ] reference to," the content of candidates' speech, meaning [it is] not eligible for the relaxed review that content-neutral restrictions receive.

*Id.* at 198-99 (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989)). And this Court also recognized that the issue did not concern contributions but, rather, speech:

> [the judicial canon] flatly prohibits *speech,* not donations, based on the topic (solicitation of a contribution) and speaker (a judge or judicial candidate) – precisely the kind of content-based regulations that traditionally warrant strict scrutiny.

---

[4] However, the campaign committee of a sitting judge with a war chest left over from a prior campaign can spend such remaining funds at any time while an attorney desiring to challenge such judge must await 30 days before the filing deadline before any funds can be raised from supporters, let alone spent.

*Id.* at 200; *accord Weaver v. Bonner*, 309 F.3d 1312, 1322 (11th Cir. 2002)("candidates are completely chilled from speaking to potential contributors and endorsers about their potential contributions and endorsements" and is, thus, a content-based restriction).

> **b. Rules 4.4(E), 4.4(F) & 4.4(G) of the Ohio Code of Judicial Conduct: Exclusion periods during which judicial campaign committees are prohibited from soliciting or receiving contributions.**

Though *Carey* involved a prohibition on the personal solicitation of campaign funds, the analysis therein also compels the conclusion that the 120-day time limitation periods also constitute content-based restrictions on speech. For the restrictions within Rules 4.4(E), 4.4(F) and 4.4(G) expressly prohibit both "the solicitation and receipt of contributions," but clearly allow other types of political speech that advances a judicial candidates' political efforts. For as noted above, this Court concluded in *Carey* that judicial a canon which "prevent[s] candidates from asking for support in some ways (campaign funds) but not others (a vote, yard signs)" constitutes censorship of speech "based on its content in the most basic of ways." *Carey*, 614 F.3d at 198-99. Accordingly, the time restrictions upon the "the solicitation and receipt of contributions" are content-based restrictions upon core political speech. *See Arkansas Right to Life State Political Action Committee v. Butler*, 29 F.Supp.2d 540, 551 (W.D. Ark. 1998)(statute imposing prohibition on state officials and legislators from accepting contribution

30 days before, during, and 30 days after any regular session of the General Assembly was subject to strict scrutiny).

          **c.  Rules 4.1(A)(1) & 4.1(A)(2) of the Ohio Code of Judicial Conduct: Prohibition on publicly supporting other candidates for public office.**

Finally, the prohibition on "[m]ak[ing] speeches on behalf of . . . another candidate for public office" and "[p]ublicly endors[ing] or oppos[ing] a candidate for another public office" also clearly constitutes a content-based restriction on the exercise of First Amendment rights..   These prohibitions are comparable to other restrictions upon a judicial candidate's ability to announce his or her views on disputed legal or political issues that the Supreme Court in *White* recognized "prohibits speech on the basis of its content and burdens a category of speech that is 'at the core of our First Amendment freedoms' – speech about the qualifications of candidates for public office."  *White*, 536 U.S. at 774.  And, thus, the Supreme Court appropriately applied strict scrutiny in *White*.   *See Wersal v. Sexton*, 674 F.3d 1010, 1019 (8th Cir. 2012)(with respect to a challenge to a prohibition on endorsements, "[b]ecause the challenged clauses are content-based restrictions on political speech, we examine Wersal's challenges under strict scrutiny").

24

**2. Defendants did not satisfy their evidentiary burden of demonstrating that the challenged provisions of the Code of Judicial Content satisfy the requirements of strict scrutiny.**

"When speech is regulated because of its content, that regulation will be subject to strict scrutiny review." *Lac Vieux Desert Band v. Michigan Gaming Control Board*, 172 F.3d 397, 409 (6th Cir. 1999). Similarly, "[p]rior restraints are presumptively invalid." *Nightclubs v City of Paducah*, 202 F.3d 884, 889 (6th Cir. 2000). For "[a]ny regulation which curtails political speech violates the Constitution unless it can withstand strict scrutiny review." *Wersal,* 674 F.3d at (Beam, J., dissenting).

Under strict scrutiny, a regulation of speech is valid only if it is "narrowly tailored to promote a compelling [g]overnment interest." *Playboy Entm't Grp.,* 529 U.S. at 813; *accord Middleton v. City of Flint,* 92 F.3d 396, 404 (6th Cir. 1996). Similarly, "[w]hen a State places a severe or significant burden on a core political right…the provision must be narrowly tailored and advance a compelling state interest." *Citizens for Tax Reform*, 518 F.3d at 387 (citing *Meyer*, 486 U.S. at 425); *accord Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)); *McIntyre*, 514 U.S. at 347 ("[w]hen a law burdens core political speech, we apply 'exacting scrutiny,' and we uphold the restriction only if it is narrowly tailored to serve an overriding state interest").

"The governmental entity that enacts the regulation bears the burden of establishing each element of the analysis, and 'the Court ordinarily does not supply reasons the [governmental] body has not given.'"  *Ohio Citizen Action*, 671 F.3d at 571 (quoting *Watchtower Bible & Tract Soc'y v. Village of Stratton*, 536 U.S. 150, 170 (2002)(Breyer, J., concurring)).  As noted above, Defendants offered no substantive evidence to satisfy their burden and prior pronouncements on behalf of the State of Ohio actually repudiate the *ipse dixit* that they have posited.

> **a. The putative justification for infringing First Amendment rights through the Ohio Code of Judicial Conduct.**

In terms of the compelling governmental interest supposedly being served by the judicial canons at issue herein, the only thing the Defendants offered before the District Court can best be described as positing a generalized interest in promoting or ensuring "judicial independence, integrity, and impartiality." (Defendants' Memorandum in Opposition, RE12, at 4, PageID#154.)  But "the Supreme Court has identified only one 'legitimate and compelling' governmental interest that justifies restrictions on campaign financing: the prevention of corruption or the appearance of corruption."  *Kruse v. City of Cincinnati,* 142 F.3d 907, 913 (6th Cir. 1998); *accord Long Beach Area Chamber of Commerce v. City of Long Beach,* 603 F.3d 684, 694 (9th Cir. 2010)("[t]he Supreme Court has concluded that 'preventing corruption or the appearance of corruption are the only

legitimate and compelling government interests thus far identified for restricting campaign finances'" (quoting *FEC v. Nat'l Conservative Political Action Comm'm,* 470 U.S. 480, 496-97 (1985)).

> **b. The evidence actually repudiates any putative justification offered by Defendants to justify the restrictions upon judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary in the State Of Ohio or the campaign committees of such judicial candidates.**

"To survive strict scrutiny, … a State must do more than assert a compelling state interest — it must demonstrate that its law is necessary to serve the asserted interest." *Burson*, 504 U.S. at 199; *see Los Angeles v. Preferred Communications, Inc.,* 476 U.S. 488, 496 (1986)("[t]his Court may not simply assume that the ordinance will always advance the asserted state interests sufficiently to justify its abridgment of expressive activity"). For "Supreme Court case law instructs that overly general statements of abstract principles do not satisfy the government's burden to articulate a compelling interest." *Awad v. Ziriax*, 670 F. 3d 1111, 1130 (10th Cir. 2012). And "[w]hen the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *Playboy Entm't Grp.,* 529 U.S. at 816.

For while the putative interest offered herein may *arguendo* be compelling when applied against individuals presently sitting as judges, *see White*, 536 U.S. at 796 (Kennedy, J., concurring)("[t]his case does not present the question whether a

27

State may restrict the speech of judges because they are judges"), the government must actually demonstrate that its speech regulations are sufficiently compelling so as to advance the government's asserted interests in a direct and material way when applied to the speech of judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates. *See id.* (Kennedy, J., concurring)("[t]he State may not regulate the content of candidate speech merely because the speakers are candidates"). For "the government must come forward with some quantum of evidence, beyond its own belief in the necessity for regulation, that the harms it seeks to remedy are concrete and that its regulatory regime advances the stated goals." *Pagan v. Fruchey*, 492 F.3d 766, 771 (6th Cir. 2007); *see Horina v. City of Granite City, Ill.*, 538 F.3d 624, 633 (7th Cir. 2008)("[a]lthough common sense does have its value when assessing the constitutionality of an ordinance or statute, it can all-too-easily be used to mask unsupported conjecture, which is, of course, *verboten* in the First Amendment context"). For "[m]ere speculation of harm does not constitute a compelling state interest." *Consol. Edison Co. of New York, Inc. v. Pub. Serv. Comm'n of New York,* 447 U.S. 530, 543 (1980); *see Contractors Ass'n v. City of Philadelphia*, 6 F.3d 990, 1008 (3d Cir 1993)("[p]lausible hypotheses are not enough to satisfy strict scrutiny"); *see also Edenfield v. Fane,* 507 U.S. 761, 770-71 (1993)(government's burden "is not satisfied by mere speculation or

conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real").

When considered in the context of *judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidate*, it becomes readily apparent that the State of Ohio is improperly relying upon numerous contingent and speculative events occurring in order to justify the absolute prohibitions of their exercise of First Amendment rights. These contingent and speculative events include: the judicial candidate must actually be successful in being elected to the state judiciary; then, assuming the judicial candidate is actually elected (which can be a high hurdle itself when challenging a sitting judge), a person personally solicited for a campaign contribution or who was previously supported (or opposed) in an unrelated political endeavor by the newly-elected judge someday becomes involved in litigation and the venue of that litigation must be in the court to which the judicial candidate was elected judge; then, the specific case of that person must be assigned to the newly-elected judge who, in turn, does not recuse himself or herself.[5]  Based solely on the assumption that *all* of the foregoing events will occur in a domino-style manner and that the newly elected judge will

_____

[5] In Hamilton County, Ohio, there are a total of 16 common pleas court judges in the general division of the court.  Thus, the contention of the State of Ohio becomes all the more removed and speculative as there is only a 6.25% chance of any particular case filed in Hamilton County being assigned to a particular judge.

repudiate his or her oath of office, the putative compelling interest of the State of Ohio would then potentially come into play.[6]

But even beyond the foregoing is the fact that the State of Ohio has repeatedly concluded, in different contexts, that sitting judges can and do separate their political activities from their obligations as judges such that any feigned interest now supposedly being advanced by the provisions of the Ohio Code of Judicial Conduct does not have a legitimate basis in fact. For as stated explicitly by then-Ohio Chief Justice Thomas Moyer in *In re Disqualification of Osowik*, 117 Ohio St.3d 1237, 884 N.E.2d 1089, 2006-Ohio-7224:[7]

---

[6]    Consider, *e.g.*, if the judicial candidate is not successful in being elected. In such a situation, the State of Ohio will have still directly and absolutely infringed the fundamental constitutional rights of such individual and his campaign committee based upon the mere possibility that the judicial candidate might get elected, that a particular individual will someday be involved in litigation in that court, *etc.* In other words, the State of Ohio is absolutely and unequivocally infringing upon the fundamental constitutional rights of an individual and his campaign committee based upon the possibility, *i.e.*, the speculation, that numerous dominoes fall into place, *i.e.*, the individual might get elected judge, a particular individual will someday be involved in litigation, *etc.* Thus, the restrictions upon the free speech rights of a judicial candidate who is not a sitting judge (and who may never be a sitting judge) and his or her campaign committee all in the name of maintaining the integrity of the judiciary (to which the candidate might never belong) is a quintessential demonstration of an overinclusive regulation infringing core political speech that under no circumstances can be justified consistent with the First Amendment.

[7]    In Ohio, the Chief Justice of the Ohio Supreme Court or his designee has the exclusive authority to hear and decided matters related to the disqualification or recusal of judges of the courts of appeals or the common pleas courts. *Beer v. Griffith,* 54 Ohio St.2d 440, 441, 377 N.E.2d 775 (1978) ("only the Chief Justice or his designee may hear disqualification matters"); *see* Ohio Const., art. IV, sec. 5(C).

We elect judges in Ohio, and we must ordinarily assume that an attorney's or a party's vocal opposition to the election of a judge will not cause that judge to harbor bias when the attorney or the party later appears before the judge.

*Id.* ¶ 6.[8]  Similarly, in *In re Disqualification of Maloney*, 91 Ohio St.3d 1204, 741

N.E.2d 133, 2000-Ohio-201, Chief Justice Moyer concluded that:

financial contributions and other forms of support during a judicial campaign do not raise a reasonable question regarding a judge's impartiality.

*Id.* at 1204, 741 N.E.2d at 134.[9]  Instead, the Ohio Supreme Court has repeatedly

placed absolute faith in the ability of judges (once on the bench) to separate any

---

[8]  *Osowik* rejected an effort to disqualify all of the judges of Lucas County from presiding over the criminal trial of Thomas Noe (of the infamous "Coingate" scandal in Ohio) despite Mr. Noe's extensive political and financial involvement in judicial elections in that county:

Noe recounts in his affidavit his many efforts to unseat judges in Lucas County who have run as Democrats in primary elections, and he describes Judge Osowik and nearly all of the judges in the county as his "political enem[ies]." Noe explains that he served as a Republican member of the board of elections in Lucas County from 1993 until 2003 and served as chairman of the county Republican Party from 1992 until 1995. He contends that he has contributed the maximum amount of money allowed by law to nearly every Republican judicial candidate in the county, and he believes that no one else has given more money to Republican judicial candidates in Lucas County since the early 1990s than he has. Noe also notes that he and his wife strongly supported Judge Osowik's election opponent in 2004 and assisted in the filing of a grievance against the judge in the 1990s for an alleged ethical violation.

*Id.* ¶2.

[9]  *Maloney* rejected an effort to disqualify a judge from presiding in a case when the attorney for a party "was an active participant in [the judge's] election campaign and served as [the judge's] campaign manager." *Id.* at 1204, 741 N.E.2d at 133-34.

prior campaign-related activities from their ethical duty as members of the judiciary:

> this court and others have always assumed that judges can remain impartial when an attorney or party who voiced opposition to the election of the judge appears in the judge's courtroom.

*In re Disqualification of Kessler*, 117 Ohio St.3d 1233, 884 N.E.2d 1086, 2005-Ohio-7151 ¶4.[10] Furthermore, the Ohio Supreme Court has recognized that:

> the public expects that a judge will use [his or her] experience appropriately in fulfilling his or her responsibilities in a manner consistent with the Code of Judicial Conduct and the judicial oath of office.

*In re Disqualification of Russo*, 81 Ohio St.3d 1210, 1211, 688 N.E.2d 515, 1997-Ohio-18.  And, as noted above, in taking the oath of office, a judge, prior to assuming office, swears or affirms that he or she will "administer justice without respect to persons" and will "faithfully and impartially [] discharge and perform all the duties incumbent on him as [a] judge."  Ohio Rev. Code. § 3.23.

Yet, now, in order to justify the restrictions on First Amendment rights of those who are not even sitting members of the judiciary (and may never be a sitting member of the judiciary) or the campaign committees of such individuals, the State

---

[10] *Kessler* rejected an effort to disqualify the judge despite a defendant submitting an affidavit indicating that she "publicly supported [the judge's] opponent in the 2004 primary election in Butler County and now lacks confidence in the judge's ability to preside fairly and impartially over the case" and a friend of the defendant submitting "a similar affidavit [which] states that she criticized the judge's treatment of the defendant during the primary election campaign."  *Id.* ¶2.

of Ohio effectively repudiates all of the foregoing pronouncements by its highest ranking judicial officer in order to proceed from a presumption that individuals, once elected to the judiciary, will not adhere to their oath of office and will not (or cannot) separate their prior political activities from their duties once on the bench. *Quære*, in order to justify the provisions of the Ohio Code of Judicial Conduct at issue herein, do the Defendants now maintain that a judge's oath of office is illusory and hollow.  But consider, though, the following pronouncement, once again, by Chief Justice Moyer:

> "Many judges were involved in politics before taking the bench," and "[p]olitics plays a role in appointment to judicial office."  We presume . . . that judges are able to set aside any partisan interests once they have assumed judicial office and have taken an oath to decide cases on the facts and the law before them.

*In re Disqualification of Bryant*, 117 Ohio St.3d 1251, 1252, 885 N.E.2d 246, 2006-Ohio-7227 (quoting *In re Mason*, 916 F.2d 384, 385, 386 (7th Cir. 1990)). And this appreciation and respect for a judge's oath of office has also been acknowledged by Defendant O'Connor, the current chief justice of the Ohio Supreme Court.  *See Hunter v. Ohio Bur. of Workers' Comp.*, Ohio Sup. Ct. Case No. 12-AP-096, at 4 ("Judges are presumed to be capable of distinguishing their personal lives from their professional obligations.  *The reasonable person would conclude that the oaths and obligations of a judge are not so meaningless* as to be overcome merely by friendship with a party's counsel" (emphasis added)); *State ex*

*rel. Maurer v. Sheward*, 71 Ohio St.3d 513, 528, 644 N.E.2d 369, 1994-Ohio-496 (Moyer, C.J., concurring)("'[e]very judge faithful to the judicial oath of office must be able to separate the law from his or her personal views when deciding cases"). Because the State of Ohio has repeatedly presumed that judicial candidates can put aside prior political activities once elected to the bench, as well as judges' ability to respect and abide by their oath of office, the Defendant cannot establish with proper evidence any actual compelling state interest that justifies the restrictions and prohibitions on core political speech imposed by the Ohio Code of Judicial Conduct against judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary or the campaign committees of such judicial candidates.

Furthermore, while a judicial candidate cannot personally solicit for a campaign contribution, judicial candidates (including sitting judges) are free to personally solicit for an endorsement of their candidacy and such personal solicitations have also been found to not implicate any significant concern, even though an endorsement may be just as valuable, if not more valuable, than a campaign contribution (which, as noted *supra*, is capped at just $600 for judicial candidates for a common pleas judgeship). In *In re Disqualification of McMonagle*, 74 Ohio St.3d 1273, 657 N.E.2d 1368 (1995), Chief Justice Moyer addressed the effort to disqualify a judge from presiding over a case in which a

newspaper was a party-defendant and the judge had, during his most recent

campaign, solicited and obtained an endorsement from that newspaper:

> Affiant contends that Judge McMonagle's continued participation in this case creates an appearance of impropriety based upon his solicitation and receipt of an endorsement in his most recent reelection campaign from the defendant-newspaper
> . . . Candidates seek these endorsements as further evidence of their fitness for public office and because of the weight they carry with the electorate. The mere fact that a judicial candidate has accepted a request for an interview with the editorial board of a local newspaper and later is endorsed by that newspaper does not mandate the disqualification of that judge from cases in which the newspaper or its employees are parties.  To hold otherwise would deprive judicial candidates of the ability to participate in an important public forum and would deny voters a significant source of information regarding the fitness of a candidate to serve in judicial office.

*Id.* at 1273-74.  Thus, while allowing the personal solicitation of endorsements in

support of one's candidacy (which, as noted above, can be more valuable that a

financial contribution), the Ohio Supreme Court absolutely prohibits the personal

solicitation of another form of endorsement, *i.e.*, campaign contributions.

In summation, the Defendants did not and cannot demonstrate with proper

evidence (as opposed to *ipse dixit*) any compelling governmental interest with

respect to the provisions of the Ohio Code of Judicial Conduct at issue herein

which is actually advance when *applied against judicial candidates in the State of*

*Ohio who are not presently sitting as members of the judiciary in the State of Ohio*

*or the campaign committees of such judicial candidates*.  This is especially evident

when consideration and appreciation is given that the Ohio Supreme Court has

expressly stated that it "presume[s] . . . that judges are able to set aside any partisan interests once they have assumed judicial office and have taken an oath to decide cases on the facts and the law before them," *Bryant*, 117 Ohio St.3d at 1252, and "assume[s] that judges can remain impartial when an attorney or party who voiced opposition to the election of the judge appears in the judge's courtroom," *Kessler*, 110 Ohio St.3d ¶4, and that "financial contributions and other forms of support during a judicial campaign do not raise a reasonable question regarding a judge's impartiality," *Maloney*, at 91 Ohio St.3d at 1204. As such, the Defendants have satisfied and cannot satisfy the requirements of strict scrutiny so that Plaintiffs have demonstrated a substantially likelihood of success in their challenge to the provisions of the Ohio Code of Judicial Conduct at issue herein and injunctive relief should issue.

> **c. The putative justification offered by the State of Ohio are not narrowly tailored to advance the putative compelling interests to justify the restrictions and prohibitions imposed by the provisions of the Ohio Code of Judicial Conduct at issue herein**.

In addition to the failure of the Defendants actually demonstrate with evidence any compelling governmental interest to justify the provisions of the Ohio Code of Judicial Conduct at issue herein, Plaintiffs further have a substantial likelihood of success because the Defendants also cannot satisfy the second

requirement under strict scrutiny, *i.e.*, that the challenged statute or regulation is narrowly tailored to advance the putative compelling interest.

> A narrowly tailored regulation is one that actually advances the state's interest (is necessary), does not sweep too broadly (is not overinclusive), does not leave significant influences bearing on the interest unregulated (is not underinclusive), and could be replaced by no other regulation that could advance the interest as well with less infringement of speech (is the least-restrictive alternative).

*Republican Party of Minnesota v. White*, 416 F.3d 738, 751 (8th Cir. 2005) (*en banc*); *accord G.K. Ltd. Travel v. City of Lake Oswego,* 436 F.3d 1064, 1073 -74 (9th Cir. 2006)("[n]arrow tailoring requires that the regulation actually advance the government's interests").

> **(i) In the context of judicial candidates who are not currently sitting as members of the judiciary or the campaign committees of such candidates, the putative compelling governmental interests are not actually advanced by the provisions of the Ohio Code of Judicial Conduct at issue herein.**

As developed above, the absolute restrictions and prohibitions on engaging in fundamental constitutional rights effectuated by the provisions of the Ohio Code of Judicial Conduct at issue herein do not advance any putative compelling interest if the judicial candidate is not successful in being elected as a judge. And because the State of Ohio "presume[s] . . . that judges are able to set aside any partisan interests once they have assumed judicial office and have taken an oath to decide cases on the facts and the law before them," *Bryant*, 117 Ohio St.3d at 1252, and

"assume[s] that judges can remain impartial when an attorney or party who voiced opposition to the election of the judge appears in the judge's courtroom," *Kessler*, 110 Ohio St.3d ¶4, and that "financial contributions and other forms of support during a judicial campaign do not raise a reasonable question regarding a judge's impartiality," *Maloney*, at 91 Ohio St.3d at 1204, applying the provisions of the Ohio Code of Judicial Conduct at issue herein upon *judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates* does not actually advance any putative compelling governmental interest even if the candidate is ultimately successful in getting elected.

Furthermore, in *Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868 (2009), the Supreme Court acknowledged that "[n]ot every campaign contribution by a litigant or attorney creates a probability of bias that requires a judge's recusal." *Id.* at 884. Instead, the Court concluded that "there is a serious risk of actual bias – based on objective and reasonable perceptions – *when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent*." *Id.* (emphasis added). "The inquiry centers on the contribution's relative size in comparison to the total amount of money contributed to the campaign, the total amount spent in the election, and

the apparent effect such contribution had on the outcome of the election. . . . The temporal relationship between the campaign contributions, the justice's election, and the pendency of the case is also critical." *Id.* at 884 & 886. And the inquiry arises only if the contribution occurs "when the case was pending or imminent." But with respect to the provisions of the Ohio Code of Judicial Conduct at issue herein, the Defendants presume (notwithstanding the repeated pronouncements to the contrary by various chief justices of the State of Ohio) that the probability of bias or corruption arises solely from the solicitation of any contribution or political activity prior to one even assuming the bench, even if a potential donor is not involved in a pending or imminent case or if such political activity is unrelated to a pending or imminent case.

Furthermore, "[i]t is well settled that only *large* contributions pose a threat of actual or perceived corruption in the political process." *Arkansas Right to Life*, 29 F.Supp.2d at 552. And, thus, this Court has expressly recognized that contribution limits alone effectively ameliorate any potential for corruption or the appearance of corruption. In *Anderson v. Spear*, 356 F.3d 651 (6th Cir. 2004), this Court struck down on First Amendment grounds a state law which prohibited a candidate or his agents from soliciting or accepting contributions after the date of the general election: "[w]hile it may be that post-election contributions are more susceptible to the impression or appearance of corruption when those contributions

are made to the *winning* candidate, the appearance of corruption all but disappears when that same contribution is made to a *losing* candidate." *Id.* at 670.[11] But even with respect to a post-election ban on contributions when the winning candidate was actually known, this Court found that "it is not the ban on making contributions after the election that effectively prevents this appearance of corruption; it is Kentucky's $1,000 contribution limit. While a contribution to a winning candidate may be considered a 'sure bet' after the election, the contribution cap prevents the late-comers from being perceived as obtaining or from actually obtaining any more influence than that which a pre-election contributor could muster from a maximum contribution." *Id.*

Similarly, the chief justices of the Ohio Supreme Court have also found campaign contributions do not *ipso facto* create or raise the prospect of bias or prejudice. In *In re Disqualification of Horvath*, 105 Ohio St.3d 1247, 826 N.E.2d 305, 2004-Ohio-7356, Chief Justice Moyer addressed the impact of the fact that a judge received a $400 campaign contribution from the opposing attorney's law firm in his most recent election. In rejecting any claim of bias or prejudice, Chief Justice Moyer declared:

---

[11]    And the same can be said with respect to the restrictions within Rules 4.4(F) and 4.4(G) which prohibit the solicitation or receipt of contributions 120 days after the judicial candidate loses, dies or withdraws from the campaign. If the judicial candidate is no longer seeking judicial office, then any putative compelling

neither the size of the $400 campaign contribution to Judge Horvath nor the timing and circumstances of its delivery suggest to me that the judge is biased or prejudiced in favor of opposing counsel. The judge has evidently not said or done anything before or after receiving the contribution to suggest that the contribution would influence his judicial decisions . . . .

*Id.* ¶12. And in *In re Disqualification of Burnside*, 113 Ohio St.3d 1211, 863 N.E.2d 617, 2006-Ohio-7223, Chief Justice Moyer rejected the effort to disqualify a judge from presiding in a case where the law firm of Baker & Hostetler was also a former defendant therein and had contributd significant amounts to the presiding judge:

Even though Judge Burnside has evidently received campaign contributions from the Baker & Hostetler firm in past judicial campaigns, I cannot conclude that a reasonable and objective observer . . . would hold serious doubts about her ability to serve fairly and impartially in this case.
. . . [The judge's] alleged receipt of "at least $8,300" from the Baker firm does not call into serious doubt the judge's ability to preside fairly and impartially in this case.

*Id.* ¶¶7 & 9.

But as noted above, the Ohio Supreme Court has specifically imposed individual contribution limits in judicial campaigns depending upon the level of the court: municipal and common pleas, $600; court of appeals, $1,200; and supreme court, $3,600.

_____

(continued…)

governmental interest in restricting fundraising (both in terms of timing and personal solicitations) completely disappears.

41

Thus, in assessing whether the absolute bans on political speech imposed by the provisions of the Ohio Code of Judicial Conduct at issue herein actually advance any putative compelling governmental interest so as to be narrowly tailored, consideration must also be afforded as to whether, with respect to the absolute ban on soliciting contributions, the putative compelling governmental interests are actually being advance *in light of the relatively low contribution limits that already exists*.  But in order to justify such restrictions on core political speech, Defendants apparently proceed from a presumption that judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary are so prone to being corrupted from the simple act of personally soliciting a campaign contribution in an amount that can be no greater than the contribution limits which already exists.  But as noted above, the Supreme Court recognized concerns of bias, *etc.*, in the judiciary arise only "when a person with a personal stake in a particular case [already pending in court] had *a significant and disproportionate influence* in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent."  *Caperton*, 556 U.S. at 884 (emphasis added).  In light of the contribution limits already imposed in judicial races, there is no prospect for any contributor to have a "significant and disproportionate influence" on the campaign.  As such, based upon the foregoing together with the repeated presumptions of the impartiality of judges once they

assume the bench, Defendants have not satisfied and cannot satisfy the requirements of strict scrutiny so that Plaintiffs have again demonstrated a substantially likelihood of success in their challenge to the provisions of the Ohio Code of Judicial Conduct at issue herein and injunctive relief should issue.

> **(ii) Because any putative compelling governmental interests are concerned with interests associated with the integrity of sitting judges, by extending such restrictions to judicial candidates who are not (and may never be) members of the judiciary, the judicial canons are overinclusive.**

"To be narrowly tailored, a restriction on speech must not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Bays v. City of Fairborn*, 668 F.3d 814, 823 (6th Cir. 2012)(quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 799 (1989)). Stated otherwise, a statute or regulation "is narrowly tailored if it targets and eliminates no more than *the exact source of the 'evil' it seeks to remedy*." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988)(emphasis added). Thus, "[w]here at all possible, government must curtail speech only to the degree necessary to meet the particular problem at hand, and must avoid infringing on speech that does not pose the danger that has prompted regulation." *Federal Election Commission v. Massachusetts Citizens for Life*, 479 U.S. 238, 265 (1986).

By extending, through the provisions of the Ohio Code of Judicial Conduct at issue herein, the absolute and severe prohibitions on the exercise of First Amendment rights by judicial candidates who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates, all in the name of preserving the integrity and respect of the judiciary (to which such judicial candidate may never even be elected), the Defendants have utilized "too blunt an instrument for such a delicate task." *Id.* For while *arguendo* the integrity of and public confidence in the judiciary, avoidance of corruption, *etc.*, may be served by prohibitions on either: (i) the personal solicitation of campaign contributions by sitting judges directed towards attorneys or parties with pending or imminent cases; or (ii) the public support or endorsement of another candidate for public office, to impose those same restrictions and prohibitions on judicial candidates who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates, goes too far. *See White*, 536 U.S. at 796 (Kennedy, J., concurring)(" [t]he State may not regulate the content of candidate speech merely because the speakers are candidates").

Yet, the provisions of the Ohio Code of Judicial Conduct at issue herein unequivocally infringe upon the free speech rights of such judicial candidates and their committee because they are candidates and no other reason. And as noted above, because the State of Ohio "presume[s] . . . that judges are able to set aside

44

any partisan interests once they have assumed judicial office and have taken an oath to decide cases on the facts and the law before them," *Bryant*, 117 Ohio St.3d at 1252, and "assume[s] that judges can remain impartial when an attorney or party who voiced opposition to the election of the judge appears in the judge's courtroom," *Kessler*, 110 Ohio St.3d ¶4, and that "financial contributions and other forms of support during a judicial campaign do not raise a reasonable question regarding a judge's impartiality," *Maloney*, at 91 Ohio St.3d at 1204, the prohibitions within the provisions of the Ohio Code of Judicial Conduct at issue herein concerning the personal solicitation of campaign contributions or expressing public support for other candidates for public office are overclusive when such prohibitions are applied to judicial candidates who are not presently sitting as members of the judiciary in the State of Ohio or the committees of such candidates. As such, Plaintiffs have yet again demonstrated a substantially likelihood of success in their challenge to the provisions of the Ohio Code of Judicial Conduct at issue herein and injunctive relief should issue.

> **(iii)  Alternative less restrictive means already exist which sufficiently advance any putative compelling governmental interest with respect to the provisions of the Ohio Code of Judicial Conduct at issue herein.**

Additionally, in order for a restriction on First Amendment rights to be narrowly tailored, "if a less restrictive means is available for the Government to

achieve its goals, the Government must use it." *Playboy Ent'mt Grp.*, 529 U.S. at 815; *see Rubin v. Coors Brewing Co.*, 514 U.S. 476, 491 (1995)(the availability of options, "all of which could advance the Government's asserted  interest in a manner less intrusive to . . . [a handler's]  First Amendment rights, indicates that the . . . [government action] is more extensive than necessary").

As noted above, the Ohio Supreme Court has specifically imposed individual contribution limits in judicial campaigns depending upon the level of the court: municipal and common pleas, $600; court of appeals, $1,200; and supreme court, $3,600.  "The reason behind contribution limits is obvious – extremely large contributions may, or at least will appear to, buy political influence.  Narrowly tailored limits on the size of campaign contributions, therefore, are constitutionally permitted to avoid corruption." *Suster v. Marshall*, 951 F.Supp. 693, 698 (N.D. Ohio 1996).  Thus, by already having in place contributions limits, the Ohio Supreme Court has already imposed a mean less restrictive than an absolute restriction on speech that supposedly serves and advances the same putative compelling governmental interest.  By stacking on top of these contribution limits the provisions of the Ohio Code of Judicial Conduct relative to campaign finance and solicitation, *the Defendants are engaging in unconstitutional overkill*.  The currently existing contribution limits are a less restrictive means to achieve the same putative compelling governmental interest supposedly being served by such

provisions of the the Ohio Code of Judicial Conduct; accordingly, these provisions challenged herein relative to campaign finance and solicitation are not the least restrictive means to achieving any such interest.

And another less restrictive mean to protect the integrity of the judiciary from campaign fundraising already exists. *See Brinkman v. Budish*, 692 F. Supp.2d 855, 865 (S.D. Ohio 2010)("[s]everal other states, by way of contrast, have more narrowly tailored revolving door statutes that restrict only compensated lobbying activities"). Unlike the situation in Ohio, judicial candidates in Alabama and North Carolina are not prohibited from personally soliciting campaign contributions. Alabama Canons of Judicial Ethics, Canon 7.B(4)(a);[12] N.C. Code of Judicial Conduct, Canon 7(B)("[a] judge or a candidate may: . . . (2) if he is a candidate, endorse any individual seeking election to any office . . . [and] (4) personally solicit campaign funds and request public support from anyone for his own campaign"). And despite these changes being in place for nearly a decade, Defendants offered nothing to indicate that allowing the personal solicitation of campaign contributions, *etc.*, has suddenly resulted in a complete breakdown in the effectiveness and integrity of the judiciary in those states that have taken a position

---

[12] This provision was adopted in 2004; prior to that time, Alabama also imposed an absolute prohibition against the personal solicitation of campaign contributions by judicial candidates.

supportive of the First Amendment.[13]   Accordingly, Plaintiffs have a substantially

likelihood of success in their challenge to the provisions of the Ohio Code of

Judicial Conduct at issue herein and injunctive relief should issue.

### B. Plaintiffs, as well as other judicial candidates who are not sitting members of the judicary, will suffer irreparable injury without the issuance of a temporary restraining order and preliminary injunction

"[E]ven minimal infringement upon First Amendment values constitutes

irreparable injury sufficient to justify injunctive relief."  *Newsom v. Norris,* 888

F.2d 371, 378 (6th Cir. 1989).  And as demonstrated above, the provisions of the

Ohio Code of Judicial Conduct at issue herein directly and absolute restrict the

exercise of fundamental First Amendment rights, *i.e.*, the ability to personally

solicit and receive campaign contributions and the ability to publicly support and

endorse other candidates for public office.  Thus, as noted above, satisfaction of

---

[13]   Alabama has resolved any concern about the integrity of the judiciary, public confidence, *etc.*, through full and complete disclosure of campaign contributions in each case pending before a judge.  Specifically, Alabama Code §§ 12-24-1 *et seq.* provides for "the recusal of a justice or judge from hearing a case in which there may be an appearance of impropriety because as a candidate the justice or judge received a substantial contribution from a party to the case, including attorneys for the party."  *Id.* 12-24-1.  The process by which this is accomplished is requiring not only the judge and his campaign committee to submit campaign finance reports, but the parties and attorneys in each case must also file disclosure statements concerning past campaign contributions.  And if a certain threshold of contributions exists, a party may, as a matter of right, demand the judge's recusal.  Thus, under the process utilized in Alabama, the putative interest posited by the Defendants herein are still preserved and advance though

48

the first prong of the preliminary injunction standard – demonstrating a strong likelihood of success on the merits – also satisfies the irreparable injury standard. *See Elrod v. Burns*, 427 U.S. 347, 373 (1973)(if a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated); *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)(finding that "when a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor").  All of the provisions of the Ohio Code of Judicial Conduct at issue in this case clearly and indisputably infringe and restrict the full and robust exercise of core political speech by Plaintiffs and by all judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates.  Thus, without the issuance of injunction relief, Plaintiffs, as well as judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates, will continue to suffer irreparable injury as a result of the enforcement and threatened enforcement of the provisions of the Ohio Code of Judicial Conduct at issue herein.

### C.  No third parties will be harmed if injunction relief is issued enjoining the provisions of the Ohio Code of Judicial

---

(continued…)

without ever infringing upon the First Amendment rights of a candidate who seeks election as a judge but is not elected.

**Conduct at issue herein as the public interest is always served by enjoining an unconstitutional law or regulation.**

"[T]he nature of the...remedy is to be determined by the nature and scope of the constitutional violation." *Missouri* v. *Jenkins,* 515 U. S. 70, 88-89 (1995). Thus, "[t]he remedy must...be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *accord Califano* v. *Yamasaki,* 442 U. S. 682, 702 (1979)("the scope of injunctive relief is dictated by the extent of the violation established").

Thus, in order to protect and maximize the political speech and dissemination of discussion on issues of public concern, it is, at a minimum, in the public interest to enjoin the enforcement of the challenged provisions of the Ohio Code of Judicial Conduct in favor of judicial candidates who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates.   For "[w]hen a constitutional violation is likely, . . . the public interest militates in favor of injunctive relief because 'it is always in the public interest to prevent violation of a party's constitutional rights.'" *Miller v. City of Cincinnati*, 622 F.3d 524, 504 (6th Cir. 2010)(quoting *Connection Distributing,* 154 F.3d at 288); *accord G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).  For "if the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment." *Déjà vu of Nashville, Inc.*

50

*v. Metropolitan Gov't of Nashville & Davidson County, Tenn.*, 274 F.3d 377, 400 (6th Cir. 2001).

**IV. Because no evidentiary record could be developed to satisfy Defendants' burden of demonstrating the constitutionality of the provisions of the Ohio Code of Judicial Conduct at issue herein (at least as applied to judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates), this Court should direct the issuance of a permanent injunction.**

While this case is before this Court on an appeal from the denial of a preliminary injunction, "an appellate court under some circumstances may decide the merits of a case in connection with its review of a denial of a preliminary injunction." *Siegel v LePore*, 234 F.3d 1163, 1171 n.4 (11th Cir. 2000). For "[w]hen the appeal from a preliminary injunction brings up dispositive issues of law that can be decided without a trial, the sensible course is to convert the preliminary-injunction proceeding into a permanent-injunction proceeding and go directly to the merits." *Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1394 (7th Cir. 1992).

Because the provisions of the Ohio Code of Judicial Conduct impose an absolute prohibition on the exercise of core political speech by judicial candidates who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates, all in the name of preserving the integrity and respect of the judiciary, even though such judicial candidate may

never be elected to or serve on the judiciary, the Defendants have utilized "too blunt an instrument for such a delicate task." *Massachusetts Citizens for Life*, 479 U.S. at 265. Stated otherwise, the Defendants cannot develop, under any scenario, a trial court record that would justify, consistent with the First Amendment, the restrictions upon core political speech of the Plaintiffs and other judicial candidates who are not presently sitting on the judiciary. Thus, in the interest of judicial economy and to mitigate any further infringement upon First Amendment rights, this Court should, at this stage, direct the issuance of a permanent injunction.

## V.   Conclusion

Upon a *de novo* review, this Court should, at a minimum, reverse the refusal of the District Court to issue a preliminary injunction and remand with instructions to issue a preliminary injunction enjoining the Defendants from undertaking any actions to enforce Rule 4.4(A), Rule 4.4(E), Rule 4.4(F), Rule 4.1(A)(2) and Rule 4.1(A)(3) of the Ohio Code of Judicial Conduct to the extent provisions are or may be applied to judicial candidates in the State of Ohio who are not presently sitting as members of the judiciary in the State of Ohio or the campaign committees of such judicial candidates. But as these provisions cannot be justified constitutionally under any circumstances with respect to the foregoing individuals or organizations, this Court should reverse and remand with instructions for the District Court to enter a permanent injunction.

.

Respectfully submitted,

 /s/ Curt C. Hartman
Curt C. Hartman (0064242)
THE LAW FIRM OF CURT C. HARTMAN
3749 Fox Point Court
Amelia, Ohio 45102
(513) 752-8800
hartmanlawfirm@fuse.net

CHRISTOPHER P. FINNEY
FINNEY LAW FIRM LLC
4270 IVY POINTE BLVD., SUITE 225
CINCINNATI, OHIO 45245
(513) 943-6655
chris@finneylawfirm.com

*Attorneys for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,918 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14-point Times New Roman.


  /s/ Curt C. Hartman                          March 11, 2014
  *Counsel for Appellants*                     *Date*



## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Appellant's Brief was or will be served electronically on March 11, 2014, upon the following counsel via the Sixth Circuit's electronic filing system:

Bridget Carty Coontz ( bridget.coontz@ohioattorneygeneral.gov)
Darlene Kristin Fawkes Pettit (darlene.pettit@ohioattorneygeneral.gov)
Ms. Holly W. Wallinger: (holly.wallinger@ohioattorneygeneral.gov)


  /s/ Curt C. Hartman
  *Counsel for Appellant*

# APPENDIX
## *Designation of Relevant District Court Documents*

In accordance with 6 Cir. R. 30(b), Appellant hereby designates the following relevant district court documents.

| District Court Docket | PageID # | Description |
|---|---|---|
| Record Entry No. 1 | 1-32 | Verified Complaint |
| Record Entry No. 1-1 | 33 - 55 | Exhibit A to Verified Complaint |
| Record Entry No. 1-2 | 56 | Exhibit B to Verified Complaint |
| Record Entry No. 2 | 58-61 | Plaintiffs' Motion for TRO/Preliminary Injunction |
| Record Entry No. 2-1 | 62-111 | Plaintiffs' Memorandum in Support of Motion for TRO/Preliminary Injunction |
| Record Entry No. 3 | 112-113 | Hartman Declaration |
| Record Entry No. 3-1 | 114-115 | Exhibit A to Hartman Declaration |
| Record Entry No. 3-2 | 116-119 | Exhibit B to Hartman Declaration |
| Record Entry No. 3-3 | 120-124 | Exhibit C to Hartman Declaration |
| Record Entry No. 3-4 | 125-126 | Exhibit D to Hartman Declaration |
| Record Entry No. 3-5 | 127-128 | Exhibit E to Hartman Declaration |
| Record Entry No. 3-6 | 129-132 | Exhibit F to Hartman Declaration |
| Record Entry No. 3-7 | 133-137 | Exhibit G to Hartman Declaration |
| Record Entry No. 12 | 151-168 | Defendants' Memorandum Opposing Motion for TRO/Preliminary Injunction |
| Record Entry No. 13 | 169-183 | Plaintiffs' Plaintiffs' Reply Memorandum in Support of Motion for TRO/Preliminary Injunction |

| Record Entry No. 15 | 220 - 221 | Defendants' Amended Notice of Filing Exhibits |
|---|---|---|
| Record Entry No. 15-1 | 222 | List of Defendants' Exhibits |
| Record Entry No. 15-2 | 223-255 | Defendants' Exhibits |
| Record Entry No. 16 | 256 | Plaintiffs' Notice of Filing Exhibit |
| Record Entry No. 16-1 | 258 | Exhibit 1 to Plaintiffs' Notice of Filing Exhibit |
| Record Entry No. 16-2 | 259 | Exhibit 2 to Plaintiffs' Notice of Filing Exhibit |
| Record Entry No. 16-3 | 260 | Exhibit 3 to Plaintiffs' Notice of Filing Exhibit |
| Record Entry No. 16-4 | 261 | Exhibit 4 to Plaintiffs' Notice of Filing Exhibit |
| Record Entry No. 16-5 | 262 | Exhibit 5 to Plaintiffs' Notice of Filing Exhibit |
| Record Entry No. 16-6 | 263 – 264 | Exhibit 6 to Plaintiffs' Notice of Filing Exhibit |
| Record Entry No. 16-7 | 265 | Exhibit 7 to Plaintiffs' Notice of Filing Exhibit |
| Record Entry No. 16-8 | 266 – 269 | Exhibit 8 to Plaintiffs' Notice of Filing Exhibit |
| Record Entry No. 16-9 | 270 – 272 | Exhibit 9 to Plaintiffs' Notice of Filing Exhibit |
| Record Entry No. 19 | 275 – 283 | Answer of Defendants |
| Record Entry No. 20 | 284-335 | Transcript of Oral Argument on August 21, 2013 |
| Record Entry No. 23 | 340-351 | Opinion & Order |
| Record Entry No. 24 | 352 | Notice of Appeal |

**ADDENDUM**
*Pertinent Provisions of the Ohio Code of Judicial Conduct*

**Rule 4.1(A) of the Ohio Code of Judicial Conduct:**
A judge or *judicial candidate* shall not do any of the following:
(1) Act as a leader of, or hold an office in, a *political party*;;
(2) Make speeches on behalf of a *political party* or another candidate for public office;
(3) Publicly endorse or oppose a candidate for another public office;.

**Rule 4.4(A) of the Ohio Code of Judicial Conduct:**
A judicial candidate shall not personally solicit campaign contributions, except as expressly authorized in this division, and shall not personally receive campaign contributions.…  A judicial candidate may solicit campaign contributions in the following manner:
(1) A judicial candidate may make a general request for campaign contributions when speaking to an audience of twenty or more individuals;
(2) A judicial candidate may sign letters soliciting campaign contributions if the letters are for distribution by the judicial candidate's campaign committee and the letters direct contributions to be sent to the campaign committee and not to the judicial candidate;
(3) A judicial candidate may make a general request for campaign contributions via an electronic communication that is in text format if contributions are directed to be sent to the campaign committee and not to the judicial candidate.

**Rule 4.4(E) of the Ohio Code of Judicial Conduct:**
The campaign committee of a judicial candidate may begin soliciting and receiving contributions no earlier than one hundred twenty days before the first Tuesday after the first Monday in May of the year in which the general election is held. If the general election is held in 2012 or any fourth year thereafter, the campaign committee of a judicial candidate may begin soliciting and receiving contributions no earlier than one hundred twenty days before the first Tuesday after the first Monday in March of the year in which the general election is held. Except as provided in divisions (F) and (G) of this rule, the solicitation and receipt of contributions may continue until one hundred twenty days after the general election.

**Rule 4.4(F) of the Ohio Code of Judicial Conduct:**

If the candidate is defeated prior to the general election, the solicitation and receipt of contributions may continue until such time as the contributions solicited are sufficient to pay the campaign debts and obligations of the judicial candidate incurred on or before the date of the primary election, plus the costs of solicitation incurred after the date of the primary election, *but in no event shall the solicitation or receipt of contributions continue beyond one hundred twenty days after the date of the election at which the defeat occurred.* Notwithstanding division (J) of this rule, the limits on contributions in a primary election period shall apply to any contributions solicited or received by the campaign committee of the defeated judicial candidate after the date of the primary election.

**Rule 4.4(G) of the Ohio Code of Judicial Conduct:**

In the case of the death or withdrawal of a judicial candidate, the solicitation and receipt of contributions may continue until such time as the contributions solicited are sufficient to pay the campaign debts and obligations of the judicial candidate incurred on or before the date of death or withdrawal, plus the costs of solicitation incurred after the date of death or withdrawal, but in no event shall the solicitation or receipt of contributions continue beyond one hundred twenty days after the date of death or withdrawal.

**Rule 4.4(N) of the Ohio Code of Judicial Conduct:**

On or before the first day of December beginning in 2008 and every four years thereafter, the secretary of the Board of Commissioners on Grievances and Discipline shall determine the percentage change over the preceding forty-eight months in the Consumer Price Index for All Urban Consumers, or its successive equivalent, as determined by the United States Department of Labor, Bureau of Labor Statistics, or its successor in responsibility, for all items, Series A. The secretary shall apply that percentage change to the *contribution* limitations then in effect and notify the Supreme Court of the results of that calculation. The Supreme Court may adopt revised *contribution* limitations based on the secretary's calculation or other factors that the Court considers appropriate.

| CONTRIBUTION LIMITS<br>Effective January 1, 2013 | | | | | | |
| CANDIDATE FOR: | INDIVIDUAL | | ORGANIZATION | | POLITICAL PARTY | |
| | Primary* | General | Primary* | General | Primary* | General |
| Supreme Court Chief Justice and Justice | $3,600 | $3,600 | $6,700 | $6,700 | $181,600 | $333,000 |
| Court of Appeals | $1,200 | $1,200 | $3,600 | $3,600 | $36,300 | $72,700 |
| Common Pleas, Municipal, and County Court more than 750,000 | $600 | $600 | $3,600 | $3,600 | $36,300 | $72,700 |
| 750,000 or less | $600 | $600 | $3,600 | $3,600 | $30,300 | $60,500 |

*Primary limits apply only if the judicial candidate has a contested primary. If there is no contested primary, the general election limits apply throughout the permissible fundraising period.

**Rule 4.6 of the Ohio Code of Judicial Conduct:**

As used in Canon 4: . . . (F) "Judicial candidate" means a person who has made a public announcement of candidacy for judicial office, declared or filed as a candidate for judicial office with the election authority, or authorized the solicitation or receipt of contributions or support for judicial office, whichever occurred first.