Case No. 2014-3037

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**JOSEPH J. PLATT, et al.**

*Appellants-Plaintiffs,*

v.

**BOARD OF COMMISSIONERS ON GRIEVANCES AND DISCIPLINE OF THE OHIO SUPREME COURT**, et al.,

*Appellees-Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO; CASE NO. 1:13-CV-00435-MRB

## BRIEF OF APPELLEES-DEFENDANTS

Respectfully submitted,

**MICHAEL DEWINE**
**Ohio Attorney General**

**BRIDGET E. COONTZ (0072919)**
**DARLENE FAWKES PETTIT (0081397)**
**ZACHERY P. KELLER (0086930)**
Assistant Attorneys General
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
T: 614-466-2872; F: 614-728-7592
bridget.coontz@ohioattorneygeneral.gov
darlene.pettit@ohioattorneygeneral.gov
zachery.keller@ohioattorneygeneral.gov

*Counsel for Board of Commissioners on Grievances and Discipline of the Ohio Supreme Court*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iii

STATEMENT REGARDING ORAL ARGUMENT ...............................................1

JURISDICTIONAL STATEMENT .........................................................................1

STATEMENT OF ISSUE........................................................................................2

INTRODUCTION ...................................................................................................2

STATEMENT OF THE CASE AND FACTS ........................................................5

I.      The Ohio Code of Judicial Conduct. ..........................................................5

II.     Plaintiffs' lawsuit and request for emergency relief. ...................................11

III.    The district court denies Plaintiffs' request for emergency
        relief. ...........................................................................................................12

SUMMARY OF ARGUMENT ...............................................................................15

ARGUMENT ..........................................................................................................17

I.      Plaintiffs do not have a strong likelihood of success on the
        merits. ..........................................................................................................19

        A.      Ohio has compelling interests in maintaining the reality
                and appearance of an independent, fair, and impartial
                judiciary. ...........................................................................................20

                1.      Both the reality and appearance of an impartial
                        judiciary are well-established compelling state
                        interests. ..................................................................................20

                2.      Compelling interests in judicial impartiality apply
                        to all judicial candidates............................................................23

        B.      The Ohio Judicial Code is narrowly tailored to advance
                the State's compelling interests of maintaining the
                appearance and reality of an impartial judiciary. ...............................27

                1.      Personal Solicitation—Rule 4.4(A). .......................................27

i

2.      Public endorsements and speeches on behalf of parties/candidates—Rules 4.1(A)(2) and 4.1(A)(3). ...............33

3.      Time Limits on judicial campaign contributions—Rules 4.4(E), (F), and (G). .......................................................43

C.      There are no less restrictive means of regulation that sufficiently address the State's compelling interests. .........................49

II.      The balance of harms weighs against a preliminary injunction. ...................53

III.     Eleventh Amendment bars Plaintiffs' claims against the Supreme Court of Ohio as well as the Board of Commissioners on Grievances and Discipline. ........................................................55

IV.      The Court should not consider Plaintiffs' request for permanent relief at this preliminary stage. .......................................................56

CONCLUSION .................................................................................................58

CERTIFICATE OF COMPLIANCE.................................................................59

CERTIFICATE OF SERVICE ..........................................................................59

DESIGNATION OF DISTRICT COURT RECORD ...........................................60

# TABLE OF AUTHORITIES

CASES                                                                                   PAGE(S)

*Babler v. Futhey*,
    618 F.3d 514 (6th Cir. 2010) ............................................................................17

*Bauer v. Shepard*,
    620 F.3d 704 (7th Cir. 2010) *cert. denied* 131 S. Ct. 2872 (2011) ............passim

*Buckley v. Valeo*,
    424 U.S. 1 (1976)............................................................................14, 43, 44, 45

*Caperton v. A.T. Massey Coal Co.*,
    556 U.S. 868 (2009)..............................................................................22, 23, 27

*Carey v. Wolnitzek*,
    614 F.3d 189 (6th Cir. 2010) ...................................................................passim

*Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., Inc.*,
    753 F.2d 1354 (6th Cir. 1985) ...................................................................56

*Cox v. Kentucky Dept. of Transp.*,
    53 F.3d 146 (6th Cir. 1995) .........................................................................55

*Cox v. Louisiana*,
    379 U.S. 559 (1965)......................................................................................22

*Diginet, Inc. v. Western Union ATS, Inc.*,
    958 F.2d 1388 (7th Cir. 1992) ...................................................................57

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*,
    489 U.S. 214 (1989)......................................................................................49

*FirstEnergy Solutions Corp. v. Flerick*,
    521 F. App'x 521 (6th Cir. 2013) ...................................................................53

*Gable v. Patton*,
    142 F.3d 940 (6th Cir. 1998) .........................................................44, 45, 46, 47

*Grutter v. Bollinger*,
    539 U.S. 306 (2003)......................................................................................49

CASES                                                                                      PAGE(S)

*In re Disqualification of Bryant*,
    117 Ohio St. 3d 1251 (Ohio 2006) ...................................................54

*In re Dunleavy*,
    838 A.2d 338 (Me. 2003)...................................................................29

*In re Fadeley*,
    802 P.2d 31 (Or. 1990) ................................................................30, 51

*In re Murchison*,
    349 U.S. 133 (1955)...........................................................................22

*Leary v. Daeschner*,
    228 F.3d 729 (6th Cir. 2000) ...........................................................17

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997)...........................................................................18

*McCutcheon v. Federal Election Comm'n*,
    134 S. Ct. 1434 (2014)...........................................................24, 44, 48

*McNeilly v. Land*,
    684 F.3d 611 (6th Cir. 2012) ...........................................................18

*Metz v. Supreme Court of Ohio*,
    46 F. App'x 228 (6th Cir. 2002) ......................................................56

*Mistretta v. United States*,
    488 U.S. 361 (1989)...........................................................................22

*Nixon v. Shrink Missouri Government PAC*,
    528 U.S. 377 (2000)....................................................................18, 57

*North Carolina Right to Life Comm. Fund for Ind. Pol. Expend. v. Leake*,
    524 F.3d 427 (4th Cir. 2008) ...............................................45, 46, 47

*North Carolina Right to Life, Inc. v. Bartlett*,
    168 F.3d 705 (4th Cir. 1999) ......................................................46, 52

CASES                                                                          PAGE(S)

*O'Neill v. Crawford*,
   132 Ohio St.3d 1472 (Ohio 2012) ......................................................25

*O'Toole v. Dove*,
   No. 12 CV 010936, 2012 WL 10208887 (Ohio Ct. Comm. Pleas Oct. 25,
   2012) ..............................................................................................25

*Offutt v. United States*,
   348 U.S. 11 (1954)..........................................................................22

*Ohio Council 8 Am. Fed. Of State, Cnty., & Mun. Em., AFL-CIO v. Brunner*,
   912 F. Supp. 2d 556 (S.D. Ohio 2012) ("*AFSCME*") ................................passim

*Ohralik v. Ohio State Bar Ass'n*,
   436 U.S. 447 (1978)........................................................................32

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984)..........................................................................55

*Republican Party of Minnesota v. White*,
   416 F.3d 738 (8th Cir. 2005) ..............................................................49

*Republican Party of Minnesota v. White*,
   536 U.S. 765 (2002) (hereinafter "*White I*") ..............................................passim

*Rutherford v. City of Cleveland*,
   179 F. App'x 366 (6th Cir. 2006) .........................................................49

*Seifert v. Alexander*,
   608 F.3d 974 (7th Cir. 2010) *cert. denied* 131 S. Ct. 2872 (2011) ............passim

*Seigel v. LePore*,
   234 F. 3d 1163 (11th Cir. 2000) ...................................................56, 57

*Shapero v. Kentucky Bar Ass'n*,
   486 U.S. 466 (1988)........................................................................30

*Simes v. Arkansas Judicial Discipline & Disability Comm'n*,
   247 S.W.3d 876 (Ark. 2007) .............................................................33

CASES                                                                   PAGE(S)

*Stretton v. Disciplinary Bd. of Supreme Court of Penn.*,
   944 F.2d 137 (3rd Cir. 1991) ..................................................................30

*Suster v. Marshall*,
   951 F. Supp. 693 (N.D. Ohio 1996) ....................................................52

*Thalheimer v. City of San Diego*,
   645 F.3d 1109 (9th Cir. 2011) ....................................18, 45, 46, 47

*The Florida Bar v. Williams-Yulee*,
   — So. 3d —, 2014 WL 1698373 (Fla. 2014) ...................21, 30, 32, 51

*United States v. Playboy Entm't Grp., Inc.*,
   529 U.S. 803 (2000)................................................................18

*United States v. Wilgus*,
   638 F.3d 1274 (10th Cir. 2011) ..............................................49

*Wersal v. Sexton*,
   674 F.3d 1010 (8th Cir. 2012) (en banc) ............................passim

*Winter v. Natural Resources Defense Council, Inc.*,
   555 U.S. 7 (2008)..................................................................18

*Wolfel v. Morris*,
   972 F.2d 712 (6th Cir. 1992) ..............................................55

*Wolfson v. Concannon*,
   — F.3d —, 2014 WL 1856390 (9th Cir. 2014)........................passim

*Yost v. Stout*,
   No. 06–4122, 2008 WL 8906379 (D. Kan. Nov. 16, 2008).........34, 42

STATUTES                                                                PAGE(S)

28 U.S.C. § 1292(a)(1)..............................................................1

28 U.S.C. §1331 ......................................................................1

OTHER AUTHORITIES                                        PAGE(S)

Ariz. Jud. Cond. R. 4.1(A)(2)-(3) ...................................................38

Ariz. Jud. Cond. R. 4.1(A)(6) ......................................................31

Ark. Jud. Cond. R. 4.1(A)(8) .......................................................31

Colo. Jud. Cond. R. 4.1(A)(2)-(3) .................................................38

Colo. Jud. Cond. R. 4.1(A)(8) ......................................................31

D.C. Jud. Cond. R. 4.1(A)(2)-(3) ..................................................38

Haw. Jud. Cond. R. 4.1(a)(2)-(3) ..................................................38

Ind. Jud. Cond. R. 4.1(A)(2)-(3) ..................................................38

Ind. Jud. Cond. R. 4.1(A)(8) .......................................................31

Iowa Jud. Cond. R. 51:4.1(A)(2)-(3) ..............................................38

Iowa Jud. Cond. R. 51:4.1(A)(8) ...................................................31

Jud. Cond. R. 4.4(B)(2) .............................................................11

Jud. Cond. R. 5.1(A)(1) .............................................................38

Jud. Cond. R. 5.1(E) ................................................................31

Kan. Jud. Cond. R. 4.1(A)(2), 4.1(B)(2) ..........................................38

Md. Jud. Cond. R. 4.4(c)(1), (c)(4) ...............................................38

Mem. Supp., Doc. 2-1 ...............................................................12

Minn. Jud. Cond. R. 4.1(A)(2)-(3) .................................................38

Minn. Jud. Cond. R. 4.1(A)(6), 4.2(B)(3) .........................................31

N.D. Jud. Cond. R. 4.2(A)(1)(b)-(c) ...............................................38

N.D. Jud. Cond. R. 4.6 ..............................................................31

N.M. Jud. Cond. R. 21-401(C)(2)-(3) ..............................................38

## OTHER AUTHORITIES

**PAGE(S)**

N.Y. Code of Jud. Cond. §100.5(A)(1)(e)-(f).........................................38

N.Y. Code of Jud. Cond. §100.5(A)(5) ..............................................31

Nev. Jud. Cond. R. 4.1(A)(2)-(3).....................................................38

Ohio Jud. Cond. R. 4.............................................................................6

Ohio Jud. Cond. R. 4.1..............................................................9, 10, 37

Ohio Jud. Cond. R. 4.1, 4.4.........................................................52

Ohio Jud. Cond. R. 4.1(A) ......................................................39, 34

Ohio Jud. Cond. R. 4.1(A)(2) ..............................................7,9, 33, 38

Ohio Jud. Cond. R. 4.1(A)(3) ...........................................7, 9, 33, 34

Ohio Jud. Cond. R. 4.1(B)(1)........................................................9

Ohio Jud. Cond. R. 4.1(B)(2)-(3)..................................................10

Ohio Jud. Cond. R. 4.2...................................................................10

Ohio Jud. Cond. R. 4.2(C) ...........................................................10

Ohio Jud. Cond. R. 4.3...................................................................25

Ohio Jud. Cond. R. 4.4...............................................................passim

Ohio Jud. Cond. R. 4.4(A) ........................................................passim

Ohio Jud. Cond. R. 4.4(E).........................................................11, 43

Ohio Jud. Cond. R. 4.4(E)-(G).............................................7, 42, 43, 48

Ohio Jud. Cond. R. 4.4(F) .............................................................11

Ohio Jud. Cond. R. 4.4(G) ............................................................11

Ohio Jud. Cond. R. 4.4(H) ............................................................11

Ohio Jud. Cond. R. 4.6(F)..............................................................12

**OTHER AUTHORITIES**                                                    **PAGE(S)**

Ohio Jud. Cond. R., Preamble.................................................................3, 4,5,6

Ohio Rule of Professional Conduct 8.2(b)..............................................6

Okla. Jud. Cond. R. 4.1(A)(2)-(3).........................................................38

Okla. Jud. Cond. R. 4.1(A)(8)...............................................................31

Tenn. Jud. Cond. R. 4.1(A)(2)-(3).........................................................38

Tenn. Jud. Cond. R. 4.1(A)(8)...............................................................32

U.S. Const., Eleventh Amendment ..........................................1, 17, 55, 56

U.S. Const., First Amendment .......................................................passim

U.S. Const., Fourteenth Amendment ...................................................20

Utah Jud. Cond. R. 4.1(A)(2)-(3)..........................................................38

Utah Jud. Cond. R. 4.2(B)(2)................................................................32

Wash Jud. Cond. R. 4.1(A)(2)-(3) ........................................................38

Wash Jud. Cond. R. 4.1(A)(7) ..............................................................32

Wis. Jud. Cond. R. 60.06(2)(b)(2), (b)(4)..............................................38

Wis. Jud. Cond. R. 60.06(4)..................................................................32

Wyo. Jud. Cond. R. 4.2(B)(4)-(5)..........................................................32

## STATEMENT REGARDING ORAL ARGUMENT

Within their opening brief, Plaintiffs request expedited oral argument. Defendants agree that this case involves important issues, including Ohio's ability to preserve the reality and appearance of judicial impartiality. Defendants do not oppose Plaintiffs' request for an expedited oral argument. Rather, Defendants defer to the Court's discretion as to whether oral argument will aid the decision-making process and the appropriate schedule for any such argument.

## JURISDICTIONAL STATEMENT

The district court has federal question jurisdiction over Plaintiffs' First Amendment challenges under 28 U.S.C. §1331. The district court, however, lacks jurisdiction over Plaintiffs' claims against both the Supreme Court of Ohio and the Board of Commissioners on Grievances and Discipline pursuant to the Eleventh Amendment. On January 6, 2014, the district court denied Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. (Opinion & Order, Doc. 23, PageID# 340-51.) That same day, Plaintiffs timely appealed the district court's denial. (Notice of Appeal, Doc. 24, PageID# 352.) Accordingly, this Court has jurisdiction over Plaintiffs' appeal under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF ISSUE

Are select provisions of the Ohio Judicial Code of Conduct—which (1) restrict judicial candidates from direct personal solicitation of funds (while leaving many other means of solicitation available); (2) prevent judicial candidates from issuing public endorsements or making speeches on behalf of parties/candidates; and (3) place time limitations on judicial campaign contributions—constitutional under the First Amendment.

## INTRODUCTION

This case emerges in the unique context of judicial campaigns, a context that implicates important (and often competing) constitutional interests.  There is no doubt that judicial elections, like all other elections, trigger First Amendment rights of speech and association.  After all, if a State chooses to place the fate of judicial candidates in the hands of voters, then candidates must be able to effectively communicate to voters.  At the same time, however, judicial impartiality is an inherent and essential part of our system of government, and any campaign activity that places impartiality *or its appearance* in jeopardy raises serious concerns.  As both the Supreme Court and this Court have acknowledged, the very legitimacy of the judiciary rests on the public's trust in its judges.  The Due Process Clause, therefore, protects the right to an objective and impartial judiciary.  In considering what regulations may apply to the campaigns of judges and judicial candidates,

both sets of interests are significant.  These different interests require careful tailoring and deliberate balancing; not complete submission of one set of interests to the other.

Less than four years ago, this Court performed an in-depth review of Kentucky's regulation of judicial candidates.  *See generally Carey v. Wolnitzek*, 614 F.3d 189 (6th Cir. 2010).   After outlining the relevant competing interests, *Carey* recognized that "[t]his is a complicated debate" and expressed "considerable sympathy for the concerns that prompted" Kentucky's judicial canons.  614 F.3d at 194.  Although *Carey* ultimately struck down broad restrictions relating to party affiliation and solicitation (much broader restrictions than the limits here), the Court made clear that a state could regulate the actions of judicial candidates—and even a candidate's speech—if it did so in a careful manner.  The Court concluded that "[j]udicial elections differ from legislative elections . . . ."  *Id.*  And the Court held that States have "*a compelling interest in regulating judicial campaign speech to ensure the reality and appearance of an impartial judiciary*."  *Id.* (emphasis added).

The Ohio Code of Judicial Conduct ("Code") provisions in question are based on the compelling interests that *Carey* highlighted.  The foundation of the Code is that "[a]n independent, fair, and impartial judiciary is indispensable to our system of justice."  Ohio Jud. Cond. R., Preamble ¶ 1.  The Code emphasizes the

need to "avoid both impropriety and the appearance of impropriety" in order to "maintain the dignity of the judicial office . . . ." *Id.* at ¶ 2. Ohio's interests in this regard are not limited to eliminating actual bias. Rather, because judicial legitimacy requires the public's confidence, the State also has a distinct interest (albeit related) in preserving the appearance of judicial impartiality.

In setting forth the Ohio Code of Judicial Conduct, the Supreme Court of Ohio has deliberately balanced First Amendment and Due Process interests, preserving the rights of both judicial candidates and the public at large. The provisions at issue narrowly focus on behavior most threatening to the reality and appearance of impartiality (e.g., one-on-one solicitation) while leaving ample alternative forms of speech and association available to judicial candidates.

Disregarding the complicated nature of this debate and the competing interests at stake, Plaintiffs ask the Court to reject Ohio's narrowly tailored regulations and strike down several Code provisions. But Plaintiffs seek this relief *only* for judicial candidates that are not sitting members of the Ohio judiciary. In other terms, Plaintiffs seek to create two strikingly different sets of rules for judicial candidates: one for sitting judges and one for non-sitting judges. What Plaintiffs continuously fail to address, however, is that the compelling interests at stake apply to sitting and non-sitting judicial candidates alike. Non-sitting candidates seek to become, and many will become, Ohio judges. As the district

4

court aptly stated, "[t]he idea that impartiality becomes important only once elected is non-sensical."  (Opinion & Order, Doc. 23, PageID# 350.)

Considering Ohio's compelling interests in the reality and appearance of an impartial judiciary, this Court should not upset the careful and narrowly tailored balance Ohio has drawn.  The district court was right to deny preliminary relief, and the Court should affirm.

## STATEMENT OF THE CASE AND FACTS

### I.    The Ohio Code of Judicial Conduct.

This case involves challenges to select provisions of the Ohio Code of Judicial Conduct as applied to non-sitting judicial candidates.   The Code "establishes standards for the ethical conduct of judges and judicial candidates." Ohio Jud. Cond. R., Preamble ¶ 3.  The Code's preamble outlines the basis for these standards:

> An independent, fair, and impartial judiciary is indispensable to our system of justice.  The United States legal system is based upon the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society.  Thus, the judiciary plays a central role in preserving the principles of justice and the rule of law.  Inherent in all the rules contained in this code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system.

*Id.* at ¶ 1.  In light of these principles, the Code advices, "Judges should maintain the dignity of judicial office at all times and avoid both impropriety and the appearance of impropriety in their professional and personal lives."  *Id.* at ¶ 2.

The Code defines impartiality as the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge."  Ohio Jud. Cond. R., Terminology.  Similarly, independence "means a judge's freedom from influence or controls other than those established by law."  *Id.*  Finally, for the purposes of the Code, integrity "means probity, fairness, honesty, uprightness, and soundness of character."  *Id.*

The Code consists of four canons that set forth "the overarching principles of judicial ethics that all judges must observe."  Ohio Jud. Cond. R., Scope ¶ 2. Canon 4 contains Rules related to campaign and political activity.  The Canon treats all candidates who seek judicial office the same, whether that candidate is a sitting judge running for re-election, an appointed judge running for an unexpired term, or a lawyer running for the first time.[1]  *See, e.g.*, Ohio Jud. Cond. R. 4 ("A judge or *judicial candidate* shall not engage in political activity that is inconsistent

---

[1]To run for judicial office, a candidate must be a lawyer licensed in Ohio.  Notably, Ohio Rule of Professional Conduct 8.2(b) states: "A lawyer who is a candidate for judicial office shall not violate the provisions of the Ohio Code of Judicial Conduct applicable to judicial candidates."

6

with the *independence*, *integrity*, or *impartiality* of the judiciary.") (emphasis in original).

Plaintiffs allege that six provisions of the Code are unconstitutional. The provisions fall into three general categories: **(1)** restrictions on personal solicitation, Rule 4.4(A); **(2)** restrictions on endorsements and speeches on behalf of parties/candidates, Rules 4.1(A)(2) and 4.1(A)(3); and **(3)** time limitations on judicial campaign contributions, Rules 4.4(E), 4.4(F), 4.4(G).

*Personal Solicitation*. Rule 4.4(A) sets forth ethical standards for judicial campaign solicitation and contributions. The Supreme Court of Ohio amended Rule 4.4(A) in response to this Court's decision in *Carey*. *See Ohio Council 8 Am. Fed. Of State, Cnty., & Mun. Em., AFL-CIO v. Brunner*, 912 F. Supp. 2d 556, 559-60 (S.D. Ohio 2012) (hereinafter "*AFSCME*") (describing amendment history). In its revised form, Rule 4.4(A) prohibits a judicial candidate from personally soliciting—subject to exceptions detailed below—or personally receiving campaign contributions. Ohio Jud. Cond. R. 4.4(A).

Instead, the Rule allows a judicial candidate to "establish a campaign committee to manage and conduct a campaign for the candidate . . . ." *Id.* The campaign committee may (with certain limitations) solicit and receive contributions on the candidate's behalf. *See id.* at Official Comment ¶ 2 ("A judicial candidate may establish a judicial campaign committee to solicit and

7

accept campaign contributions, manage the expenditure of campaign funds, and generally conduct the campaign."). Moreover, a judicial candidate may personally solicit contributions in any of the following manners:

> (1) A judicial candidate may make a general request for campaign contributions when speaking to an audience of twenty or more individuals;
>
> (2) A judicial candidate may sign letters soliciting campaign contributions if the letters are for distribution by the judicial candidate's campaign committee and the letters direct contributions to be sent to the campaign committee and not to the judicial candidate;
>
> (3) A judicial candidate may make a general request for campaign contributions via an electronic communication that is in text format if contributions are directed to be sent to the campaign committee and not to the judicial candidate.

*Id.* (emphasis omitted). Finally, following the decision in *AFSCME*, judicial candidates may also directly seek contributions from immediate family members. 912 F. Supp. 2d at 572.

The Official Comments describe the Supreme Court of Ohio's reasoning in amending Rule 4.4(A). The prohibitions on personal solicitation specifically protect four vital interests:

> (1) avoiding the appearance of coercion or quid pro quo, especially when a judicial candidate engages in a one-on-one solicitation of a lawyer or party who appears before the court; (2) preserving both the appearance and reality of an impartial, independent, and noncorrupt judiciary; (3) ensuring the public's right to due process and fairness; and (4) furthering the public trust and confidence in the impartiality of the judicial decision-maker.

Ohio Jud. Cond. R. 4.4(A), Official Comment ¶ 1. The Comments further emphasize that "Rule 4.4(A) recognizes that some forms of solicitation are less coercive and less intrusive than others and permits a candidate to engage in solicitations that are less personal and directed at a wider audience." *Id.*

*Endorsements and Speeches*. Rule 4.1 addresses the political and campaign activities of judicial candidates. Plaintiffs specifically challenge two provisions: Rule 4.1(A)(2) and 4.1(A)(3). The first provision, Rule 4.1(A)(2), prohibits judges and judicial candidates from "[m]ak[ing] speeches on behalf of a political party or another candidate for public office . . . ." Ohio Jud. Cond. R. 4.1(A)(2) (emphasis omitted). Similarly, Rule 4.1(A)(3) provides that a judicial candidate shall not "[p]ublicly endorse or oppose a candidate for another public office . . . ." Ohio Jud. Cond. R. 4.1(A)(3). These provisions closely track the language of the American Bar Association's ("ABA") Model Code of Judicial Conduct. *See* Model Code of Jud. Cond. R. 4.1 (August 2010).

Importantly, Ohio's Code leaves open other political and campaign activities. For example, a judicial candidate may still register and vote as a member of a political party. Ohio Jud. Cond. R. 4.1, Official Comment ¶ 3. A judicial candidate may "[a]ttend or speak to a political gathering . . . ." Ohio Jud. Cond. R. 4.1(B)(1). And a judicial candidate may make contributions, or expend campaign funds, to attend social events of another public official/candidate or a

9

political party.  Ohio Jud. Cond. R. 4.1(B)(2)-(3).  Nor is a judicial candidate restricted from contributing his or her personal funds to another candidate for public office.  Finally, the Code does not prohibit "statements or announcements of personal views on legal, political, or other issues . . . ."  Ohio Jud. Cond. R. 4.1, Official Comment ¶ 10.

Moreover, Rule 4.2 expressly permits a judicial candidate to do any of the following:

> (1) Conduct joint fundraising activities with other judicial candidates;
>
> (2) Appear in joint campaign advertisements with other judicial candidates;
>
> (3) Participate with judicial and nonjudicial candidates in fundraising activities organized or sponsored by a political party;
>
> (4) Appear with other candidates for public office on slate cards, sample ballots, and other publications of a political party that identify all of the candidates endorsed by the party in an election;
>
> (5) Seek, accept, or use endorsements from any person or organization;
>
> (6) State, in person or in advertising, that he or she is a member of, affiliated with, nominee of, or endorsed by a political party.

Ohio Jud. Cond. R. 4.2(C) (emphasis omitted).

_Timing of Contributions_.  Finally, Plaintiffs challenge the time limitations Rule 4.4 places on solicitation and receipt of judicial campaign contributions.  Rule 4.4 allows a judicial candidate to begin raising campaign contributions 120 days

10

before the primary election. Ohio Jud. Cond. R. 4.4(E). The candidate may then continue soliciting and receiving contributions an additional 120 days after: the general election (Rule 4.4(E)); defeat (Rule 4.4(F)); or death or withdrawal (Rule 4.4(G))—whichever comes the earliest. Notably, the ABA Model Code of Judicial Conduct recommends placing similar time limitations on solicitation (both before and after the relevant election), although it leaves the exact timing to the determination of the States. *See* Model Code of Jud. Cond. R. 4.4(B)(2).

The Code also allows a candidate to contribute his or her own personal funds 90 days before the solicitation period. Ohio Jud. Cond. R. 4.4(H). Relatedly, the candidate may contribute personal funds for the purpose of satisfying campaign debt until the debt is paid. *Id.*

## II.    Plaintiffs' lawsuit and request for emergency relief.

Plaintiffs-Appellants, Joseph J. Platt, Platt for Judge Campaign Committee, and campaign treasurer Mark Miller, filed the current action on June 20, 2013. They bring claims against the Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio, each member of the Board, the Supreme Court of Ohio, each Justice of the Supreme Court of Ohio, Ohio Disciplinary Counsel, and the Administrative Judge of the Ohio Courts of Appeals.

Mr. Platt has formed a campaign committee for the purposes of receiving judicial campaign contributions.  (Compl. ¶ 7, Doc. 1, PageID# 8.)   He is,

therefore, considered to be judicial candidate for the purposes of Ohio's Judicial Code of Conduct.[2]  *See* Ohio Jud.  Cond. R. 4.6(F).  Mr. Platt along with his campaign committee and committee treasurer maintain that six provisions of the Code (identified above) violate the First and Fourteenth Amendments.  (Compl., Doc. 1, PageID# 1-32.)  Plaintiffs seek to enjoin enforcement of these rules, but only as applied to non-sitting judicial candidates.  (*Id.* at PageID# 30-31.)

On the same day they filed their Complaint, Plaintiffs moved for a temporary restraining order and preliminary injunction.  (Mot. TRO & Prel. Inj., Doc. 2, PageID# 58-61.)  Plaintiffs limited their arguments in support of the Motion to First Amendment challenges.  (*See generally* Pls.' Mem. Supp., Doc. 2-1, PageID# 62-111.)  Following briefing of the parties, the district court held a hearing on August 21, 2013.

### III.  The district court denies Plaintiffs' request for emergency relief.

The district court issued an Opinion and Order denying Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction on January 6, 2014. (Opinion & Order, Doc. 23, PageID# 340-51.)  The court held that Plaintiffs failed to demonstrate a likelihood of success on the merits of their claims.  (*Id.* at PageID# 350.)

---

[2]Outside of forming a campaign committee, Defendants are unaware of any further action by Mr. Platt to seek judicial office in 2014.

12

The district court recognized that this Court's decision in *Carey* provided the relevant framework for analysis. (*Id.* at PageID# 345.) In assessing Ohio's ban on speeches on behalf of a political party, the district court observed that "Ohio, like Kentucky, has a compelling interest in forming a non-biased judiciary." (*Id.* at PageID# 346.) The court found, however, that "unlike Kentucky, Ohio has narrowly tailored its rule so that it does not do too much or too little to advance the government's objectives." (*Id.*) The court emphasized the various avenues Ohio leaves open for judicial candidates to engage in political activity. (*Id.* at PageID# 346-47.) Relying on similar decisions from other federal courts, the court also concluded that Ohio's bans on endorsing or making speeches on behalf of other candidates are constitutional. (Opinion & Order, Doc. 23, PageID# 347.)

The district court further held that Ohio's limits on personal solicitation do not violate the First Amendment. The court reasoned that although *Carey* had found Kentucky's solicitation clause to be overbroad, *Carey* suggested that a narrower prohibition on "face-to-face solicitation" might lead to a different conclusion. (*Id.* at PageID# 348.) Furthermore, the district court relied upon a previous decision in the Southern District of Ohio, *AFSCME*, holding that Rule 4.4(A)—as amended in response to *Carey*—is narrowly tailored. (*Id.* at PageID# 348-49.) The court emphasized:

> By banning judicial candidates from engaging in one-on-one solicitation Rule 4.4 hones in on the aspect of fund raising that is most

> apt to raise eyebrows and hackles. By permitting candidates to
> personally solicit campaign contributions from large groups of
> individuals and to indirectly solicit campaign contributions in writing
> and through their campaign committees, the rule allows them
> adequate opportunity to fund their campaigns. Accordingly, this
> Court finds that the rule is narrowly tailored to target the aspects of
> fund raising that cause the greatest threat to the appearance of judicial
> impartiality.

(*Id.* (quoting *AFSCME*, 912 F. Supp. 2d at 568-69)).

Applying the "closely drawn" campaign contribution framework from *Buckley v. Valeo*, 424 U.S. 1 (1976), the district court determined that Ohio's time limitations are constitutional. (*Id.* at PageID# 349-50.) The court agreed with the State's position that "limiting judicial candidates' ability to solicit funds to a certain period of time reduces any erosion in public perception of the independence of the judiciary that a never-ending solicitation of money could cause." (*Id.* at PageID# 350.)

Finally, within its Opinion and Order, the district court rejected Plaintiffs' attempt to exempt non-sitting judicial candidates from Ohio's ethics requirements. The court stressed that "[t]he idea that impartiality becomes important only once elected is non-sensical." (*Id.*) In balancing the potential harms of injunctive relief, the court further stated, "[r]estrictions need to be all in or all out. Under Plaintiffs' proposed scenario, Platt would have the ability to campaign and raise money for an unlimited time and in an unlimited manner while incumbent judges would be required to follow the constraints of the Code of Judicial Conduct." (Opinion &

Order, Doc. 23, PageID# 351.)  The court held that such a scenario would not serve the public interest.  (*Id.*)

Plaintiffs filed their Notice of Appeal to the district court's denial of emergency relief on the same day as the court's decision.  (Notice of Appeal, Doc. 24, PageID# 352.)

## SUMMARY OF ARGUMENT

The district court was correct to deny preliminary relief because Plaintiffs will not succeed on the merits.  There are several reasons for this conclusion.

First, as this Court and various other federal courts have recognized, the State has compelling interests in maintaining a judiciary that is independent, fair, and impartial.  These compelling interests include not only ensuring the reality of an impartial judiciary, but also preserving the *appearance* of and the public's confidence in judicial impartiality.  Moreover, compelling interests in the reality and appearance of an impartial judiciary extend to non-sitting judicial candidates, all of whom seek to become Ohio judges.

Second, the challenged provisions of the Ohio Judicial Code of Conduct are narrowly and carefully tailored to advance the State's compelling interests and leave judicial candidates with numerous alternatives for speech and association. Ohio's personal solicitation clause focuses on the types of intimate one-on-one solicitation most likely to raise red flags.  Similarly, Ohio's limits on endorsements

and select forms of political speechmaking narrowly target the types of behavior—such as political powerbrokering and quid-pro-quo exchanges—that are likely to foster bias or at least its appearance. Finally, Ohio's time limitations on judicial campaign contributions allow judicial candidates considerable time to raise campaign funds, while preventing the negative consequences that a never-ending solicitation period would cause.

Third, the alternatives Plaintiffs identify (e.g., judicial oath and recusal) fail to sufficiently address the State's compelling interests in the reality and appearance of an impartial judiciary. Such after-the-fact options are insufficient to cure the damage—especially to the appearance of impartiality—that would result from unlimited judicial campaign activity. The mere taking of an oath, or eventual recusal, cannot cleanse a judicial candidate of any taint associated with judicial-campaign conduct contrary to the principles of the Code.

In addition to the improbability of success on the merits, the balancing of harms supports the district court's denial of emergency relief. Because many judicial candidates will ultimately become judges, allowing candidates to engage in the types of unchecked activities Plaintiffs contemplate, even on a temporary basis, would harm and undermine the integrity of Ohio's judiciary. Moreover, the relief Plaintiffs request would create an inequitable system with two distinct sets of judicial campaign rules.

16

Along separate lines, the State entities that Plaintiffs sue are entitled to sovereign immunity under the Eleventh Amendment. Consequently, no relief is appropriate as to these Defendants.

Finally, even assuming the Court disagrees with the State Defendants at this preliminary stage, the Court should decline Plaintiffs' request to transform this interlocutory appeal into a means of obtaining permanent relief.

## ARGUMENT

This Court reviews a district court's denial of a preliminary injunction for an abuse of discretion. *Babler v. Futhey*, 618 F.3d 514, 519 (6th Cir. 2010). The district court's finding of facts will stand unless they are clearly erroneous, while its legal conclusions are reviewed *de novo*. *Id.* at 520.

In deciding whether a preliminary injunction is appropriate, the Court considers four factors: (1) whether the movant has a strong likelihood of success; (2) whether the movant would suffer irreparable injury absent an injunction; (3) whether a preliminary injunction would substantially harm others; and (4) whether a preliminary injunction would serve the public interest. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). These factors are not prerequisites, but must be balanced against each other. *Id.*

In the context of this appeal—a request for a preliminary injunction on First Amendment grounds—there is a basic tension between the applicable legal

17

standards. *Compare Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *with United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816-17 (2000). On the one hand, "[w]hen the Government restricts speech, [it] bears the burden of proving the constitutionality of its actions." *Playboy Entm't Grp.*, 529 U.S. at 816; *but see Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 391 (2000) ("The quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised."). Consequently, once a plaintiff establishes a colorable claim of a First Amendment violation, the burden shifts to the government to justify the restriction. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011).

On the other hand, even in the First Amendment context, a preliminary injunction remains "an extraordinary remedy" and "[t]he party seeking the preliminary injunction bears the burden of justifying such relief . . . ." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (involving First Amendment challenge to Michigan campaign contribution limits). A preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008); *cf. also McNeilly*, 684 F.3d at 615 ("[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion . . . .") (internal quotations omitted).

18

I.    **Plaintiffs do not have a strong likelihood of success on the merits.**

Beginning with the first factor for preliminary relief, Plaintiffs fail to demonstrate a likelihood of success. Even under a strict scrutiny framework, Plaintiffs' claims lack merit.

In *Carey*, this Court applied strict scrutiny to Kentucky's restrictions on judicial solicitation and party affiliation clauses. 614 F.3d at 198; *but see Seifert v. Alexander*, 608 F.3d 974, 983, 988 (7th Cir. 2010) *cert. denied* 131 S. Ct. 2872 (2011) (applying "balancing approach" to endorsement restriction and "closely drawn" standard to personal solicitation restriction); *Bauer v. Shepard*, 620 F.3d 704, 713 (7th Cir. 2010) *cert. denied* 131 S. Ct. 2872 (2011) (following *Seifert* balancing approach).

Under strict scrutiny, a law "must be narrowly tailored to advance a compelling state interest." *Carey*, 614 F.3d at 200 (internal quotations omitted). A law cannot be (1) overinclusive, by "unnecessarily circumscrib[ing] protected expression" or (2) underinclusive, by "leav[ing] appreciable damage to [the] vital interest unprohibited . . . ." *Republican Party of Minnesota v. White*, 536 U.S. 765, 775, 780 (2002) (hereinafter "*White I*") (internal quotations omitted).

In this case, the limited speech restrictions within Ohio's Judicial Code of Conduct satisfy First Amendment requirements. The State possesses compelling

interests in the reality and appearance of judicial impartiality, and the ethical rules at issue are carefully tailored to preserve the State's interests.

### A. Ohio has compelling interests in maintaining the reality and appearance of an independent, fair, and impartial judiciary.

#### 1. Both the reality and appearance of an impartial judiciary are well-established compelling state interests.

With regard to the compelling-interest prong of strict scrutiny, the State readily meets its burden. It is well settled that States have "a compelling interest in regulating judicial campaign speech *to ensure the reality and appearance of an impartial judiciary*." *Carey*, 614 F.3d at 194 (emphasis added).

The Supreme Court considered the interest of judicial impartiality in *White I*. The Court strongly indicated (if not held) that judicial impartiality—defined as "the lack of bias for or against either *party* to the proceeding"—was a compelling state interest.[3] *See White I*, 536 U.S. at 775-76 (emphasis in original); *see also Wersal v. Sexton*, 674 F.3d 1010, 1021 (8th Cir. 2012) (en banc) (recognizing that *White I* implied that judicial impartiality, within its traditional meaning, was a compelling state interest).

---

[3] In *White I*, the Supreme Court also considered, without deciding, whether impartiality "described as open-mindedness" was a compelling state interest. 536 U.S. at 778; *see also Siefert*, 608 F.3d at 979-80 ("We think it beyond doubt that states have a compelling interest in developing, and indeed are required by the Fourteenth Amendment to develop, these independent-minded and faithful jurists.").

Following *White I*, federal courts across the country—including this Court—have recognized that judicial impartiality is a compelling state interest. *See, e.g.*, *Carey*, 614 F.3d at 194; *Wersal*, 674 F.3d at 1020 ("[W]e have little difficulty concluding Minnesota's interest in preserving impartiality, defined as the lack of bias for or against a party to a proceeding, is compelling."); *Seifert*, 608 F.3d at 981 ("Insofar as impartiality refers to the lack of bias for or against either party to the proceeding, it is a compelling state interest.") (internal quotations omitted); *AFSCME*, 912 F. Supp. 2d at 563 ("[I]t is established that actual judicial impartiality serves a state's compelling interest of safeguarding a litigant's due process rights.").

Importantly, Ohio's compelling interests include not only preventing actual impartiality, but also preserving the appearance of judicial impartiality. *See, e.g.*, *Carey*, 614 F.3d at 194 (recognizing that the compelling state interest extends to ensuring the "appearance of an impartial judiciary"); *Wersal*, 674 F.3d at 1023-24 ("[W]e easily conclude Minnesota's interest in preserving the appearance of impartiality is compelling, particularly when cast against other interests courts have recognized as compelling."); *AFSCME*, 912 F. Supp. 2d at 564 ("[T]his Court concludes that Ohio's interests in preserving both the appearance and reality of impartial judges are compelling."); *The Florida Bar v. Williams-Yulee*, — So. 3d —, 2014 WL 1698373, at *4 (Fla. 2014) ("Florida has a compelling state interest

in preserving the integrity of [its] judiciary and maintaining the public's confidence in an impartial judiciary.") (internal quotations omitted); *cf. also White I*, 536 U.S. at 776 (referencing both impartiality "or the appearance of impartiality").  As the Eighth Circuit has noted, "the appearance of impartiality may be defined as the perception the public maintains regarding the judiciary's lack of bias for or against either party to a proceeding."  *Wersal*, 674 F.3d at 1021-22.

The appearance of impartiality is a vital interest because "[t]he legitimacy of the Judicial Branch ultimately depends on its reputation for impartiality and nonpartisanship."  *Mistretta v. United States*, 488 U.S. 361, 407 (1989).  As the Supreme Court explained in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009):

> Courts, in our system, elaborate principles of law in the course of resolving disputes.  The power and the prerogative of a court to perform this function rest, in the end, upon the respect accorded to its judgments. The citizen's respect for judgments depends in turn upon the issuing court's absolute probity. *Judicial integrity is, in consequence, a state interest of the highest order*.

556 U.S. at 889 (emphasis added) (quoting *White I*, 536 U.S. at 793 (Kennedy, J., concurring)); *see also Cox v. Louisiana*, 379 U.S. 559, 565 (1965) ("A State may also properly protect the judicial process from being misjudged in the minds of the public."); *In re Murchison*, 349 U.S. 133, 136 (1955) ("[T]o perform its high function in the best way 'justice must satisfy the appearance of justice.'") (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)).

22

Finally, in addition to the reality and appearance of judicial impartiality, this Court and others have recognized additional highly-related compelling state interests arising within the judicial campaign context. For example, *Carey* stated that Kentucky has a compelling interest "in diminishing reliance on political parties in judicial selection" based on the desire "that judicial elections be nonpartisan in nature." 614 F.3d at 201. In examining Rule 4.4(A), *AFSCME* also concluded that Ohio has a compelling interest "in protecting potential donors from coercion by judicial candidates . . . ." 912 F. Supp. 2d at 564-65.

### 2. Compelling interests in judicial impartiality apply to all judicial candidates.

Plaintiffs' attempts to rebut Ohio's compelling interests all fail. To begin with, Plaintiffs' repeated assertions regarding a lack of evidence miss the mark. As the Supreme Court and other federal courts have repeatedly acknowledged, the State's interests in the reality and appearance of judicial impartiality are *inherent* in both the Due Process Clause and this country's system of government. *See, e.g.*, *Caperton*, 556 U.S. at 876 ("It is axiomatic that [a] fair trial in a fair tribunal is a basic requirement of due process.") (internal quotations omitted); *Wersal*, 674 F.3d at 1022 ("[M]aintaining the appearance of impartiality is systemic in nature, as it is essential to protect the judiciary's reputation for fairness in the eyes of all citizens.").

23

Plaintiffs' reliance on case law regarding non-judicial campaigns is also misplaced. (*See* Pls.' Add'l Citation, Doc. 20.) Within the setting of federal non-judicial campaigns, the Supreme Court has thus far "identified only one legitimate governmental interest for restricting campaign finances: preventing corruption or the appearance of corruption." *McCutcheon v. Federal Election Comm'n*, 134 S. Ct. 1434, 1450 (2014). As detailed above, however, there is overwhelming authority from this Court and others—flowing from the Supreme Court's decision in *White I*—recognizing different (but similar) compelling interests in preserving both the reality and appearance of judicial impartiality. The Supreme Court made clear in *White I* that its decision was "neither assert[ing] or imply[ing] hat the First Amendment requires campaigns for judicial office to sound the same as those for legislative office." 536 U.S. at 783. Moreover, this Court has already determined that "[j]udicial elections differ from legislative elections . . . ." *Carey*, 614 F.3d at 194.

Most importantly, despite Plaintiffs' suggestions otherwise, compelling interests in the reality and appearance of judicial impartiality apply to all judicial candidates. *See, e.g.*, *Wolfson v. Concannon*, — F.3d —, 2014 WL 1856390, at *7 (9th Cir. 2014) (recognizing—in context of non-sitting candidate challenge—that States have compelling interests in "the appearance and actuality of an impartial judiciary" and "maintaining public confidence in the judiciary"); *Bauer v. Shepard*,

620 F.3d 704 (7th Cir. 2010) (upholding personal solicitation and political activity limitations—in light of impartiality interests—despite challenges from both sitting and non-sitting judicial candidates).

The district court correctly observed that exclusion of non-sitting candidates is nonsensical.  (Opinion & Order, Doc. 23, PageID# 350.)  Within the setting of judicial elections, it is certain that some non-sitting candidates will win and ultimately become judges.  And a non-sitting candidate's campaign activities are neither forgotten nor erased simply because the candidate becomes a judge.  Accordingly, in forming and applying ethics rules, Ohio must account for the activities of all judicial candidates.  Ironically, Plaintiffs actually seek to make Ohio's judicial canons underinclusive (under the strict scrutiny framework) by exempting non-sitting candidates.  In other terms, and as one Ohio court has cogently articulated, "if the State cannot demand integrity [] from judicial candidates in the campaign, then the public will not expect it when they are on the bench, ultimately undermining confidence in the judicial system.  In the end, 'this is a clear expression of a compelling governmental interest.'"  *O'Toole v. Dove*, No. 12 CV 010936, 2012 WL 10208887, at *6 (Ohio Ct. Comm. Pleas Oct. 25, 2012) (holding that Ohio Judicial Conduct Rule 4.3 is constitutional under the First Amendment) (quoting *O'Neill v. Crawford*, 132 Ohio St.3d 1472 (Ohio 2012)).

Contrary to Plaintiffs' suggestions, the campaign activities of non-sitting judges (if unlimited) pose significant threats to the reality and appearance of judicial impartiality. By selectively focusing on a single judicial candidate and a single campaign contributor, Plaintiffs imply that Ohio is relying on a speculative chain of events to justify its ethics rules. (*See* Pls.' Br. 29.) But ethics rules must account for the behavior of all non-sitting judicial candidates, not one single candidate. Viewing judicial elections in the aggregate, it is obvious that many non-sitting judicial candidates will ultimately become judges. Moreover, as many courts have indicated, the groups of people most likely to support and participate in judicial campaigns are also likely to have a vested interest in the outcome. *See, e.g.*, *Carey*, 614 F.3d at 204 ("Complicating matters further, the general public often, though not invariably, pays less attention to judicial elections than other elections, forcing judicial candidates to focus their fundraising efforts on the segment of the population most likely to have an interest in judicial races: the bar."). Combining these circumstances, many (if not most) non-sitting candidates who become judges will face situations that implicate the interests of judicial impartiality or, at the very least, the appearance of judicial impartiality. Accordingly, it is necessary for Ohio to regulate the activities of both sitting and non-sitting judicial candidates, in a narrowly-tailored fashion, to protect its compelling interests.

**B.    The Ohio Judicial Code is narrowly tailored to advance the State's compelling interests of maintaining the appearance and reality of an impartial judiciary.**

The six provisions of the Ohio Code of Judicial Conduct at issue serve to protect Ohio's compelling interests in the reality and appearance of judicial impartiality. *See Caperton*, 556 U.S. at 889 (recognizing that judicial codes "serve to maintain the integrity of the judiciary and the rule of law. . . . [T]he codes are [t]he principal safeguard against judicial campaign abuses that threaten to imperil public confidence in the fairness and integrity of the nation's elected judges") (internal quotations omitted).  The Rules at issue narrowly target campaign activities that are most threatening to judicial impartiality and its appearance.  At the same time, the Rules leave judicial candidates with many options for both speech and association.

### 1.    Personal Solicitation—Rule 4.4(A).

As outlined above, Rule 4.4(A) prohibits judicial candidates from engaging in certain types of personal solicitation; specifically, intimate forms of direct solicitation.  In response to *Carey*, the Supreme Court of Ohio modified Rule 4.4(A) to permit judicial candidates to solicit groups of twenty or more and to send personal solicitations through direct email and regular mail.  A subsequent amendment to the Rule allows solicitations in electronic format, such as web sites, emails, and text messages.  Since *Carey*, federal courts have upheld Rule 4.4(A),

27

as amended, and other analogous limitations on personal solicitation by judicial candidates. *See, e.g.*, *AFSCME*, 912 F. Supp. 2d at 568-69 (holding that Rule 4.4(A) is narrowly tailored to Ohio's interests in preserving the appearance of impartiality and preventing coercion); *Wersal*, 674 F.3d at 1031 (holding that Minnesota's ban on personal solicitation is narrowly tailored to preserving impartiality and its appearance). Despite these circumstances, Plaintiffs seek to *further* modify the Rule by completely exempting non-sitting judges. Because Rule 4.4(A) is narrowly tailored to Ohio's compelling interests, the Court should reject Plaintiffs' request.

*Carey* provides considerable guidance for the Court's analysis in this case. In *Carey*, this Court struck down a much broader Kentucky regulation, completely prohibiting judges and candidates from personally "solicit[ing] campaign funds . . . ." 614 F.3d at 195. The Court held that the clause was not narrowly tailored, but stressed that Kentucky did have compelling interests in instituting a solicitation clause. *Id.* at 204-06.

*Carey's* reasoning suggests that the result would have been different if the regulation had isolated "one-on-one" types of direct solicitation. *See id.* at 205-06; *cf. also Bauer*, 620 F.3d at 710 ("The panel in *Carey* did not question the propriety of limits on in-person solicitation, where the possibility of reward or retaliation is greatest . . . ."); *AFSCME*, 912 F. Supp. 2d at 565 (reading *Carey* to "suggest[] that

28

a state *could* enact a narrowly tailored solicitation clause—say, one focused on one-on-one solicitations or solicitations from individuals with cases pending before the court") (internal quotations omitted).  For example, *Carey* found Kentucky's judicial canon "most troubling" because it applied to "mass mailing and group solicitations" rather than focusing on "the problems associated with 'direct' solicitation . . . ."  614 F.3d at 206.  The Court also stressed that—as opposed to "in-person solicitations"—such "indirect methods of solicitation present little or no risk of undue pressure or the appearance of a quid pro quo."  *Id.* at 205.

The Eighth Circuit Court of Appeals' post-*Carey* decision in *Wersal* is also instructive.  In that case, an *en banc* Eighth Circuit panel held that a comparable Minnesota canon—prohibiting personal solicitation, but allowing a candidate "to make a general request for campaign contributions when speaking to an audience of 20 or more people"—was constitutional.  *Wersal*, 674 F.3d at 1028-31 (internal quotations omitted).  The plurality, which applied strict scrutiny, reasoned that the solicitation clause served compelling state interests because "direct personal solicitation creates a situation where potential contributors must choose to either contribute to the candidate, or decline to contribute, with a resulting risk of retribution."  *Id.* at 1029 (citing *In re Dunleavy*, 838 A.2d 338, 351 (Me. 2003)).  Moreover, with regard to the appearance of impropriety, *Wersal* stressed "'[i]nsulating the judge from direct solicitation eliminates the appearance (at least)

of impropriety and, to that extent, preserves the judiciary's reputation for integrity.'" *Id.* at 1030 (quoting *Stretton v. Disciplinary Bd. of Supreme Court of Penn.*, 944 F.2d 137, 145 (3rd Cir. 1991)).

Here, by limiting restrictions to one-on-one, small group, and other forms of intimate/direct personal solicitation, Rule 4.4(A) follows the guidance of *Carey* and focuses on the types of fundraising "most apt to raise eyebrows and hackles." *AFSCME*, 912 F. Supp. 2d at 568. As various courts have indicated, such forms of direct solicitation are particularly troubling and cause unique threats to both the reality and appearance of judicial impropriety. *See, e.g.*, *Bauer*, 620 F.3d at 710 (highlighting "the potential for actual or perceived mutual back scratching, or for retaliation against attorneys who decline to donate" in the personal solicitation context); *Seifert*, 608 F.3d at 989 ("A contribution given directly to a judge, in response to a judge's personal solicitation of that contribution, carries with it both a greater potential for a quid pro quo and a greater appearance of a quid pro quo than a contribution given to the judge's campaign committee at the request of someone other than the judge, or in response to a mass mailing sent above the judge's signature."); *Williams-Yulee*, 2014 WL 1698373, at *4 ("[T]he spectacle of lawyers or potential litigants directly handing over money to judicial candidates should be avoided if the public is to have faith in the impartiality of its judiciary.") (quoting *In re Fadeley*, 802 P.2d 31, 41 (Or. 1990)); *cf. also Shapero v. Kentucky*

30

*Bar Ass'n*, 486 U.S. 466, 475 (1988) ("[D]irect-mail solicitation generally-poses much less risk of overreaching or undue influence than does in-person solicitation . . . .") (internal quotations omitted). The appearance of impartiality is especially important in this regard because, even assuming such contributions do not result in actual favoritism, intimate forms of personal solicitation breed the appearance of a biased judiciary whose favor can be purchased through donations.

Unlike the regulation at issue in *Carey*, Rule 4.4(A) leaves open various forms of indirect (or less personal) solicitation that do not trigger the same level of concern. A candidate is able to make group speeches, send mass mailings, and utilize electronic communication during the fundraising process. Furthermore, Rule 4.4(A) is in line with, or more lenient than, the ethical regulations that the majority of States have enacted. Based on Defendants' review, at least thirty-one other States (a strong majority considering that some States do not have judicial elections) have either analogous limitations on personal solicitation or more stringent restrictions.[4]

---

[4]*See* Alas. Jud. Cond. Canon 5C(3); Ariz. Jud. Cond. R. 4.1(A)(6); Ark. Jud. Cond. R. 4.1(A)(8); Colo. Jud. Cond. R. 4.1(A)(8); Fla. Jud. Cond. Canon 7C(1); Idaho Jud. Cond. Canon 5C(2); Ill. Jud. Cond. Canon 7B(2); Ind. Jud. Cond. R. 4.1(A)(8); Iowa Jud. Cond. R. 51:4.1(A)(8); Ky. Jud. Cond. Canon 5B(2); La. Jud. Cond. Canon 7A(6); Me. Jud. Cond. Canon 5C(3) (applying to candidates for elections as judge of probate); Mich. Jud. Cond. Canon 7B(2)(a); Minn. Jud. Cond. R. 4.1(A)(6), 4.2(B)(3); Miss. Jud. Cond. Canon 5C(2); Neb. Jud. Cond. §5-304.1(A)(8); N.Y. Code of Jud. Cond. §100.5(A)(5); N.D. Jud. Cond. R. 4.6; Okla. Jud. Cond. R. 4.1(A)(8); Oreg. Jud. Cond. R. 5.1(E); Pa. Jud. Cond. Canon 7B(2);

Finally, in addition to preserving the State's interests in the reality and appearance of impartiality, Rule 4.4(A) also preserves the State's closely-related interest in preventing coercion. Relying on the reasoning of this Court's decision in *Carey*, the district court in *AFSCME* concluded that "a personal solicitation from a judicial candidate is uniquely coercive because the person solicited—whether an attorney or a member of the public who might ultimately have a case pending before that judge—will feel pressure to donate or face retribution . . . ." 912 F. Supp. 2d at 569. Other courts have similarly observed the danger of undue pressure arising from direct solicitation. *See*, *e.g.*, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 457 (1978) (recognizing that, unlike more general forms of solicitation, "in-person solicitation may exert pressure and often demands an immediate response"); *Seifert*, 608 F.3d at 989 ("[T]he perceived coerciveness of direct solicitations is closely related to their potential impact on impartiality. A direct solicitation closely links the quid−avoiding the judge's future disfavor−to the quo−the contribution."); *Williams-Yulee*, 2014 WL 1698373, at *5 ("Allowing a judge to personally solicit or accept campaign contributions . . . not only has the possibility of making a judge feel obligated to favor certain parties in a case, it

---

R.I. Jud. Cond. Canon 5B(1); S.C. Jud. Cond. Canon 5C(2); S.D. Jud. Cond. Canons 5A(1)(e), 5C(2)(c); Tenn. Jud. Cond. R. 4.1(A)(8); Utah Jud. Cond. R. 4.2(B)(2); Vt. Jud. Cond. Canon 5C(3); Wash Jud. Cond. R. 4.1(A)(7); W. Va. Jud. Cond. Canon 5C(2); Wis. Jud. Cond. R. 60.06(4); Wyo. Jud. Cond. R. 4.2(B)(4)-(5).

inevitably places the solicited individuals in a position to fear retaliation if they fail to financially support that candidate.") (quoting *Simes v. Arkansas Judicial Discipline & Disability Comm'n*, 247 S.W.3d 876, 882 (Ark. 2007)).

Here, Rule 4.4(A) prevents any such judicial coercion (or its appearance) by requiring personal solicitation to occur through less intimate and intrusive means. *See AFSCME*, 912 F. Supp. 2d at 569 ("Because the intimacy of in-person solicitation is what creates the potential for coercion, it is difficult to imagine an anti-coercion remedy that stops short of prohibiting intimate, in-person solicitation."). Because Rule 4.4(A) narrowly focuses on this and other compelling interests, it should be upheld.

### 2. Public endorsements and speeches on behalf of parties/candidates—Rules 4.1(A)(2) and 4.1(A)(3).

Plaintiffs also challenge Rules 4.1(A)(2) and 4.1(A)(3). As noted above, Rule 4.1(A)(2) prohibits a judge or judicial candidate from "[m]ak[ing] speeches on behalf of a political party or another candidate for public office . . . ." Ohio Jud. Cond. R. 4.1(A)(2) (emphasis omitted). Rule 4.1(A)(3) states that a judge or judicial candidate shall not "[p]ublicly endorse or oppose a candidate for another public office . . . ." Ohio Jud. Cond. R. 4.1(A)(3). Like Ohio's personal solicitation clause, these Rules are narrowly tailored to serve the State's compelling interests in the reality and appearance of judicial impartiality.

Importantly, this Court did not consider similar restrictions in *Carey*. Instead, *Carey* faced a party affiliation clause that broadly banned judges and candidates (with only two limited exceptions) from "disclosing their party affiliation . . . ." 614 F.3d at 201. Given the extreme scope of the clause, the Court held that the prohibition violated the First Amendment. *Id.* at 201-04. The Court emphasized that simply announcing party affiliation serves as "a shorthand way of announcing one's views on *many* topics of the day." *Id.* at 202 (emphasis in original). At the same time, however, *Carey* indicated that it was legitimate (and advanced a compelling state interest) for Kentucky to enact measures to avoid undue influence or reliance on political parties in the judicial selection process. *Id.* at 201.

The bulk of federal courts to have considered similar limitations—including the Seventh and Eighth Circuits—have held that narrow restrictions on endorsement and speechmaking (analogous to Rule 4.1(A)'s limitations) meet First Amendment requirements. *See, e.g.*, *Wersal*, 674 F.3d at 1024-28; *Seifert*, 608 F.3d at 983-88; *Bauer*, 620 F.3d at 711-13; *Yost v. Stout*, No. 06–4122, 2008 WL 8906379, at *6 (D. Kan. Nov. 16, 2008); *but see Wolfson*, 2014 WL 1856390, at *9-10.

In *Wersal*, for example, the Eighth Circuit considered an endorsement clause nearly identical to Ohio Rule 4.1(A)(3), stating that "a judge or a judicial candidate

34

shall not publicly endorse or, except for the judge or candidate's opponent, publicly oppose another candidate for public office."  674 F.3d at 1024 (internal quotations omitted).  Applying strict scrutiny, the court's plurality held that the "endorsement clause is narrowly tailored to serve its compelling interests of preserving impartiality and preserving the appearance of impartiality."  *Id.* at 1028. The Judges stated:

> When a judge or judicial candidate endorses another candidate, it creates a risk of partiality toward the endorsed party and his or her supporters, as well as a risk of partiality against other candidates opposing the endorsed party.  The endorsement clause is directly aimed at this speech about parties, as it prevents potential litigants in a case from the risk of having an unfair trial.  At the very least, the clause serves the State's interest in avoiding the appearance of impropriety.  Namely, even if a particular endorsement does not serve to create an actual bias toward or against a particular party, the act of endorsement itself undermines the judiciary's appearance of impartiality because the public may perceive the judge to be beholden to political interests.

*Id.* at 1025.  The opinion further stressed that an endorsement "is a direct expression of bias in favor of or against potential parties to a case, or at the very least, damages the appearance of impartiality. Therefore, the clause targets precisely that speech which most likely implicates Minnesota's compelling interests."  *Id.* at 1026.

The Seventh Circuit approved a similar endorsement clause in *Seifert*.  *See* 608 F.3d at 983-88.  The clause at issue in *Seifert* prohibited "judges and judicial candidates from [p]ublicly endors[ing] or speak[ing] on behalf of any partisan

candidate or platform." *Id.* at 983 (internal quotations omitted). Although applying an intermediate level of scrutiny, *Seifert* recognized the special circumstances—including the dangers of political powerbrokering—that accompany judicial endorsements:

> While an interest in the impartiality and perceived impartiality of the judiciary does not justify forbidding judges from identifying as members of political parties, a public endorsement is not the same type of campaign speech targeted by the impermissible rule against party affiliation in this case or the impermissible rule against talking about legal issues the Supreme Court struck down in *White I*. As Judge Siefert notes, "[e]ndorsements primarily benefit the endorsee, not the endorser" and endorsements may be exchanged between political actors on a quid pro quo basis. . . . This amounts to a concession that *offering an endorsement is less a judge's communication about his qualifications and beliefs than an effort to affect a separate political campaign, or even more problematically, assume a role as political powerbroker.*

608 F.3d at 984 (emphasis added, internal citation omitted). Consequently, the court concluded that there was a "dividing line" between general party affiliation and "a judge's entry into the political arena on behalf of his partisan comrades." *Id.*

Shortly after *Seifert* (in a case involving both sitting and non-sitting judicial candidates), the Seventh Circuit upheld a separate rule prohibiting judicial candidates from assuming partisan leadership roles or "mak[ing] speeches on behalf of a political organization . . . ." *Bauer*, 620 F.3d at 710-11. The *Bauer* court found that considerations of judicial impartiality and its appearance "support

36

limits on political leadership and speechifying as fully as they support limits on partisan endorsements . . . ." *Id.* at 711. The court further described that allowing judges to speak on behalf of parties would give the public "good reason to believe that the judge is deciding according to the party's platform rather than the rule of law. . . . [And] would poison the reputation of the whole judiciary and seriously impair public confidence . . . ." *Id.* at 712.

As *Bauer* noted, the Code of Conduct for United States Judges also includes limitations on judicial endorsements and speechmaking. *See* 620 F.3d at 712 (recognizing that if Indiana's ethical limitations on judges are unconstitutional, so are Canons 4 and 5 of the federal Code of Conduct). In particular, Canon 5(A)(2) of the Code of Conduct states that a federal judge should not "make speeches for a political organization or candidate, or publicly endorse or oppose a candidate for public office . . . ." Thus, considering federal ethics standards, it is "doubt[ful] that [Supreme Court precedent] licenses federal and state judges to give stump speeches for candidates running for President, senator, governor, or mayor, or act as leaders of political parties." *Bauer*, 620 F.3d at 712.

Moreover, as detailed above, Ohio imposes the same basic restrictions as the ABA. *See* Model Code of Jud. Cond. R. 4.1 ("[A] judge or a judicial candidate shall not: . . . (2) make speeches on behalf of a political organization; [or] (3) publicly endorse or oppose a candidate for public office . . . ."). Not

37

surprisingly then, the overwhelming majority of States—by Defendants' count *forty-six* including the District of Columbia—impose highly comparable (if not the exact same) restrictions on judges and/or judicial candidates.[5]

Considering the above authority and circumstances, Rules 4.1(A)(2) and 4.1(A)(3) are narrowly tailored to serve Ohio's compelling state interests. The Rules' prohibitions are limited to two select types of behavior: candidate endorsement and speeches on behalf of parties/candidates. As the Courts of Appeals recognized in *Wersal*, *Seifert*, and *Bauer*, these types of behavior are

---

[5]*See* Alas. Jud. Cond. Canon 5A(1)(b)-(c); Ariz. Jud. Cond. R. 4.1(A)(2)-(3); Ark. Jud. Cond. R. 4.1(A)(2)-(3); Cal. Jud. Cond. Canon 5(A)(2); Colo. Jud. Cond. R. 4.1(A)(2)-(3); Conn. Jud. Cond. R. 4.1(a)(2)-(3); Del. Jud. Cond. R. 4.1(A)(2); D.C. Jud. Cond. R. 4.1(A)(2)-(3); Fla. Jud. Cond. Canon 7A(1)(b)-(c); Ga. Jud. Cond. Canon 7A(1)(b); Haw. Jud. Cond. R. 4.1(a)(2)-(3); Idaho Jud. Cond. Canon 5(1)(b)-(c); Ind. Jud. Cond. R. 4.1(A)(2)-(3); Iowa Jud. Cond. R. 51:4.1(A)(2)-(3); Kan. Jud. Cond. R. 4.1(A)(2), 4.1(B)(2); Ky. Jud. Cond. Canon 5A(1)(c); La. Jud. Cond. Canon 7A(2)-(3); Me. Jud. Cond. Canon 5A(1)(b)-(c); Md. Jud. Cond. R. 4.4(c)(1), (c)(4); Mass. Jud. Cond. Canon 5A(1)(b); Mich. Jud. Cond. Canon 7A(1)(a)-(b); Minn. Jud. Cond. R. 4.1(A)(2)-(3); Miss. Jud. Cond. Canon 5A(1)(b); Mont. Jud. Cond. R. 4.1(A)(2)-(3); Neb. Jud. Cond. §5-304.1(A)(2)-(3); N.H. Jud. Cond. R. 4.1(A)(2); N.J. Jud. Cond. Canon 7A(2); N.M. Jud. Cond. R. 21-401(C)(2)-(3); Nev. Jud. Cond. R. 4.1(A)(2)-(3); N.Y. Code of Jud. Cond. §100.5(A)(1)(e)-(f); N.D. Jud. Cond. R. 4.2(A)(1)(b)-(c); Okla. Jud. Cond. R. 4.1(A)(2)-(3); Oreg. Jud. Cond. R. 5.1(A)(1) (limited to endorsement); Pa. Jud. Cond. Canon 7A(1)(b); R.I. Jud. Cond. Canon 5A(1)(b)-(c); S.C. Jud. Cond. Canon 5A(1)(b)-(c); S.D. Jud. Cond. Canon 5A(1)(b)-(c); Tenn. Jud. Cond. R. 4.1(A)(2)-(3); Tex. Jud. Cond. Canon 5(2) (prohibiting endorsement, allowing judges/candidates to "express his or her views on political matters"); Utah Jud. Cond. R. 4.1(A)(2)-(3); Va. Jud. Con. Canon 5A(1)(b); Vt. Jud. Cond. Canon 5A(1)(b)-(c); Wash Jud. Cond. R. 4.1(A)(2)-(3); W. Va. Jud. Cond. Canon 5A(1)(b)-(c); Wis. Jud. Cond. R. 60.06(2)(b)(2), (b)(4); Wyo. Jud. Cond. R. 4.1(A)(2)-(3).

particularly threatening to the reality and appearance of judicial impartiality. A judicial candidate who speaks on behalf of another candidate, or who publicly endorses or opposes another candidate, makes a public commitment to the individual that he or she supports. Practically, such speech also evidences the reverse; opposition to the individual that the candidate runs against. A speech on behalf of a party can similarly be construed as a public endorsement of the party's platform, numerous candidates on a party's "slate," and corresponding public opposition to party opponents. By focusing on these specific judicial activities, Ohio prevents both the actuality and perception of political powerbrokering, quid-pro-quo political exchanges, and undue entanglement between judges and partisan politics.

Although Rule 4.1(A) limits particularly troubling forms of political activity, the Code leaves judicial candidates with ample room to engage in political and partisan expression. For example, an Ohio judicial candidate can still engage in a variety of (less threatening) activities including:

- Registering and voting as a member of a political party;

- Attending or speaking at a political gathering;

- Attending (and buying tickets for) social events of another candidate or of a political party;

- Making statements regarding personal views on legal, political, or other issues;

39

- Conducting joint fundraising activities with other judicial candidates;

- Appearing in joint campaign advertisements with other judicial candidates;

- Participating with judicial and nonjudicial candidates in fundraising activities organized or sponsored by a political party;

- Seeking, accepting, or using endorsements from any person or organization; and

- Stating that he or she is a member or affiliated with a political party.

*See supra* at 9-10.

Again, Ohio's interests in this area apply to non-sitting and sitting judicial candidates alike. A non-sitting judge can just as easily engage in political exchanges or become entrenched in party politics along his or her path to the bench. And if such a candidate becomes a judge, as many candidates do, the consequences of such campaign activity—*including the effect on the public's perception*—remain.

Defendants disagree with the Ninth Circuit's recent suggestion that the analysis is different for non-sitting candidates. *See Wolfson*, 2014 WL 1856390, at *9-10. Despite authority from the Seventh and Eighth Circuit, a heavily-divided Ninth Circuit panel (producing three different opinions) held that Arizona's similar endorsement and speechmaking limitations were unconstitutional as applied to

non-sitting candidates. *Id.* Although acknowledging that the case presented a close question, *Wolfson* reasoned that such regulations are underinclusive because they fail to address activity prior to candidacy. *Id.* at *9. This reasoning is flawed. Neither litigants nor the public at large can reasonably expect judges to have been insulated from politics their entire careers. Moreover, most judges hold a variety of positions, and represent a number of clients, before joining the bench. A candidate's prior work experience, and/or advocacy on behalf of a past client, does not mean that he or she cannot be impartial upon becoming a judge. Simply put, pre-candidate activity does not pose the same threat to the appearance of impartiality.

Once a person declares judicial candidacy, however, he or she seeks a position that requires patronage and favoritism to be set aside. Candidates ask for admittance into an exclusive profession, and impartiality is an essential qualification. Consequently, continuing to engage in heavily partisan activity at the time of candidacy is different, and poses a greater threat to the public's confidence and allows for a far more reasonable inference regarding potential biases. The dissent in *Wolfson* was correct that the majority's analysis was "impractical" and failed to identify any "less restrictive way[] to preserve judicial impartiality and its appearance . . . ." 2014 WL 1856390, at *17 (Tallman, J., dissenting).

41

Approaching the problem from a practical perspective, it is highly probable (if not certain) that a judicial candidate who becomes a judge will preside over cases involving partisan issues and/or elected officials. For example, in the instant matter, Mr. Platt seeks to endorse a candidate for school board. (Compl. ¶ 87, Doc. 1, PageID# 25-26.) Should he do so, and should both he and that candidate prevail, Mr. Platt could be called upon to make decisions about the school district or its board members; as such issues are frequently before common pleas court judges. Restricting a candidate's ability to engage in endorsements (or speechmaking on behalf of candidates/parties) eliminates the potential for partiality or the appearance of partiality in such scenarios. *See Yost*, 2008 WL 8906379, at *6 ("When a case arises in front of a judge who has endorsed one of the parties for public office, there is at least an appearance that the endorsed party is more likely to win based on favoritism toward that party. The endorsement clause is narrowly tailored to eliminate that scenario.").

Given the limited and targeted nature of the regulation and the breadth of permitted activity, Rules 4.1(A)(2) and 4.1(A)(3) satisfy First Amendment requirements. The district court, therefore, was correct to deny relief relating to these Rules.

### 3.    Time Limits on judicial campaign contributions—Rules 4.4(E), (F), and (G).

Plaintiffs' remaining challenges are to the timing provisions within Rule 4.4. These timing limitations are relatively straightforward. A judicial candidate, through his or her campaign committee, may begin soliciting and receiving campaign funds 120 days (roughly four months) before the primary election. Ohio Jud. Cond. R. 4.4(E). The candidate/committee may then continue raising campaign funds for another 120 days after the candidate wins, loses, quits, or (in the extreme case) dies. Ohio Jud. Cond. R. 4.4(E)-(G). These provisions allow judicial candidates considerable time to collect campaign contributions and are well within First Amendment boundaries.

As a preliminary matter, and as the district court determined, Rule 4.4(A)'s timing limitations should be analyzed under the "closely drawn" campaign contribution framework enunciated in *Buckley v. Valeo*, 424 U.S. 1 (1976). In briefing below, the State Defendants agreed—"[f]or the purposes of [Defendants'] response only"—to analyze Plaintiffs' challenges under strict scrutiny. (Defs.' Mem. Opp'n, Doc. 12, PageID# 155.) With regards to Rule 4.4's timing limitations, however, strict scrutiny is not the appropriate standard.[6]

---

[6]To the extent it is possible to waive a correct legal standard, a questionable premise to begin with, any such waiver did not occur in this case. Again, the State Defendants' agreement was expressly limited to its response in opposition to emergency relief at the trial level. (Defs.' Mem. Opp'n, Doc. 12, PageID# 155.)

Since *Buckley*, the Supreme Court has not applied strict scrutiny to limitations on campaign contributions. *See McCutcheon*, 134 S. Ct. at 1444 (describing *Buckley* standards); *cf. also Carey*, 614 F.3d at 200 (implying that limitations on judicial campaign contributions, as opposed to complete prohibitions on speech based on topic, do not receive strict scrutiny). *Buckley* explained that "the government may adopt reasonable time, place, and manner regulations, which do not discriminate among speakers or ideas, in order to further an important governmental interest unrelated to the restriction of communication." 424 U.S. at 18. Moreover, *Buckley* reasoned that limitations on campaign contributions, in contrast to limitations upon expenditures, impose "only marginal restrictions upon" communication. 424 U.S. at 20. Accordingly, limitations on campaign contributions, even those constituting "a significant interference with protected rights of political association", "*may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgement of associational freedom*." *McCutcheon*, 134 S. Ct. at 1444 (emphasis added, internal quotations omitted).

Here, because the relevant provisions of Rule 4.4 only limit the timing of campaign contributions, and do not completely prohibit such speech, the "closely drawn" standard is appropriate. *See Gable v. Patton*, 142 F.3d 940, 951 (6th Cir.

Moreover, the decision before this Court applied the correct legal standard. (Opinion & Order, Doc. 23, PageID# 349.)

1998) (applying *Buckley* campaign contribution analysis to Kentucky statute placing a time limit on campaign contributions); *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1122 (9th Cir. 2011) (finding that temporal limits on campaign contributions are "an even more marginal restriction" than the dollar limits at issue in *Buckley*) (internal quotations omitted); *North Carolina Right to Life Comm. Fund for Ind. Pol. Expend. v. Leake*, 524 F.3d 427, 441 (4th Cir. 2008) (applying "closely drawn" standard to timing limitations on judicial election fundraising).

Moving to the merits of Plaintiffs' challenges, this Court addressed the topic of time limitations in *Gable*. In that case, a Kentucky statute prohibited "all gubernatorial candidate slates from accepting contributions . . . during the twenty-eight days preceding a primary or general election." *Gable*, 142 F.3d at 949. With regard to external contributions from campaign contributors,[7] the Court held that the time limitation was constitutional under the First Amendment. *Id.* at 951. The Court stated that it "would be ignoring the obvious if we maintained that the right of candidates to receive contributions emerged unfettered from the *Buckley* decision." *Id.* The Court noted that a time limitation so close to elections was "not a trivial restriction" and would force candidates "to rearrange their fundraising . . . ." *Id.* Nevertheless, in light of *Buckley*, the Court held that the

---

[7]The statute also limited candidates' ability to contribute to their own campaigns during this twenty-eight day period. *Gable*, 142 F.3d at 949. The Court struck down this specific application, finding the provision functionally equivalent to a prohibition on expenditures. *Id.* at 953.

limitation was justified considering Kentucky's interests in preventing the actuality and appearance of corruption. *Id.* at 950-51.

In addition to *Gable*, other Courts of Appeals have also upheld timing limitations on campaign contributions. *See, e.g.*, *Thalheimer*, 645 F.3d at 1122-24 (holding that banning campaign contributions made outside of a twelve-month election window did not violate the First Amendment); *North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 715-17 (4th Cir. 1999) (concluding that ban on contributions while the legislature was in session was constitutional). Moreover, the Fourth Circuit's decision in *Leake* upheld a time limit on contributions within the judicial election context. 524 F.3d at 441 (finding that ban on contributions for twenty-one days before an election was closely drawn to minimizing "the danger of corruption (or the appearance thereof) in judicial elections").

In this case, the timing limitations within Rule 4.4 satisfy First Amendment scrutiny. Importantly, any burden on judicial candidates' First Amendment rights is minimal. The Rules provide candidates with considerable fundraising time both before and after the relevant election. For example, a candidate who loses in the primary still receives a full eight months (four pre-election, four post-election) for fundraising activity. A candidate who wins the primary can continue raising funds all the way to the general election, and then receives an additional four months post-election for campaign contributions. Comparatively speaking, Rule 4.4 is far

less restrictive than the provisions at issue in *Gable* and *Leake* (both held to be constitutional) because Rule 4.4's timing limitations do not infringe on critical campaign periods close to elections. Moreover, prior to the fundraising period, a candidate remains free to engage in a variety of core campaign activities including attending political functions, marching in parades, speaking in any venue about their candidacy, and campaigning door-to-door. Under these circumstances, Rule 4.4's timing limitations require candidates (at most) "to rearrange their fundraising by concentrating it" into broad pre- and post-election periods. *See Gable*, 142 F.3d at 951.

In contrast to this minimal burden, Rule 4.4 advances compelling state interests in both the reality and appearance of judicial impartiality. The Rule requires fundraising to take place in a concrete, although still lengthy, election cycle. This is important because if contributions occur too far from the time of the election, then solicitation is less connected with running a campaign and more easily interpreted as a potential request for *quid* with the *quo* to come after the election. *See Thalheimer*, 645 F.3d at 1121 (crediting a city's argument that "contributions made near an election are clearer expressions of political speech, whereas off-year contributions are more likely . . . [to] creat[e] the appearance of quid pro quo corruption by the sale of influence") (internal quotations omitted). Accordingly, viewing the election year on a spectrum, Rule 4.4 provides judicial

47

candidates with sufficient time to solicit and receive funds, while prohibiting fundraising during non-election periods.   In other terms, "limiting judicial candidates' ability to solicit funds to a certain period of time reduces any erosion in public perception of the independence of the judiciary that a never-ending solicitation of money could cause."  (Opinion & Order, Doc. 23, PageID# 350.)

Importantly, the 120-day solicitation periods apply uniformly to all judges and judicial candidates.   To the extent Plaintiffs asserts such limits are unconstitutional due to unequal funds between challengers and sitting judges— e.g., incumbents' ability to rely on "war chests" from past campaigns—this assertion is unavailing for the purposes of the First Amendment.  The Supreme Court has stated that the First Amendment prohibits attempts "to level the playing field or to level electoral opportunities or to equalize[e] the financial resources of candidates."   *McCutcheon*, 134 S. Ct. at 1450 (internal quotations omitted). Furthermore, all judicial candidates, whether sitting or non-sitting, may utilize funds raised during previous campaigns.

On a final note, to the extent Plaintiffs challenge the 120-day after-the-fact timing limitations, Rules 4.4(F) and (G), the First Amendment rights at stake are different and less weighty.  Once a judicial candidate has lost or withdrawn, they are no longer engaging in political communication because, at that point, the

campaign is over.  Instead, these Rules focus on post-campaign debt collection and ensure that at some point there will be an end to solicitation.

### C.    There are no less restrictive means of regulation that sufficiently address the State's compelling interests.

As detailed above, to survive strict scrutiny a law must be narrowly tailored to serve compelling state interests.  Moreover, the strict scrutiny standard requires the regulation in question to be the "least restrictive means" of protecting the compelling interest in question.  *See Carey*, 614 F.3d at 203; *but see Rutherford v. City of Cleveland*, 179 F. App'x 366, 373 (6th Cir. 2006) ("Although a high standard to meet, '[s]trict scrutiny is not strict in theory, but fatal in fact.'") (quoting *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003)); *United States v. Wilgus*, 638 F.3d 1274, 1289 (10th Cir. 2011) (indicating, at least in the context of the Religious Freedom Restoration Act, that the least restrictive means inquiry does not require negation of "every conceivable option" but instead requires the government to "refute the alternative schemes offered by the challenger").  Importantly for the present inquiry, the alternatives in question must actually "*advance the interest as well* [as the regulation at issue] with less infringement of speech . . . ."  *Republican Party of Minnesota v. White*, 416 F.3d 738, 752 (8th Cir. 2005) (*White II*) (emphasis added) (citing *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 226 (1989)).

49

In this case, the State has employed the least restrictive means of combating specific threats to the reality and appearance of judicial impartiality. Plaintiffs maintain that judicial oaths, the option of recusal, and caps on campaign contributions are enough to ensure impartiality and its appearance. This is not correct. None of these options serve the State's compelling interests and address unique problems as well as, or even in a comparable manner to, the challenged Rules.

Self-check mechanisms such as judicial oaths or recusal do not sufficiently address impartiality concerns, particularly with regard to the appearance of impartiality. Even assuming such options cure actual impartiality (an assumption trusting every judge to act appropriately), they do not advance the public's confidence in judicial candidates that are allowed to engage in unlimited behavior during the campaign process. As the court described in *AFSCME*, these types of self-check options "do[] little to bolster the appearance of impartiality because the skeptical citizen might question a judge's assessment of his or her own impartiality." 912 F. Supp. 2d at 568. Moreover, by the time of any potential recusal, damage to perception may have already occurred. *See, e.g.*, *Wersal*, 674 F.3d at 1031 ("[R]ecusal serves as an after-the-fact remedy that is insufficient to cure the damage to the appearance of impartiality fashioned by personal solicitation, which is by and large complete at the time of the 'ask.'").

50

Recusal is also an unworkable solution from a practical standpoint. Lawyers, and other repeat players, are a constant part of the campaign process, and a judge cannot be reasonably expected to recuse anytime a party or attorney has some level of connection to his or her campaign activity. *Cf.* Ohio Bd. Comm'rs on Griev. & Disc., Opinion 2014-1 (Jan. 31, 2014) available at http://www.supremecourt.ohio.gov/Boards/BOC/Advisory_Opinions (advising that a lawyer's "mere participation" in a judicial campaign does not require disqualification absent evidence of "a substantial political relationship with a judge"). The Seventh Circuit explained this dilemma in *Seifert*:

> It is an unfortunate reality of judicial elections that judicial campaigns are often largely funded by lawyers, many of whom will appear before the candidate who wins. It would be unworkable for judges to recuse themselves in every case that involved a lawyer whom they had previously solicited for a contribution.

608 F.3d at 990; *cf. also Williams-Yulee*, 2014 WL 1698373, at *4 ("The persons most actively interested in judicial races, and the persons who are the most consistent contributors to judicial campaigns, are lawyers and potential litigants.") (quoting *Fadeley*, 802 P.2d at 41).

Relatedly, any requirement of automatic (or routine) recusal would create practical difficulties for courts in small counties. The *Wolfson* dissent recognized the "obvious problem[s]" dependency on recusal would cause:

> In Arizona, only very small counties elect judges. And some small counties may well have only one superior court judge. If that one

51

> judge campaigns for someone who is then elected sheriff or district attorney, an outside judge would be necessary in every criminal case and in all civil cases involving the county where the district attorney is its lawyer. Constant recusal is no solution.

*Wolfson*, 2014 WL 1856390, at *18 (Tallman, J., dissenting). Ohio would face the same problems, as many Ohio counties have courts consisting of only one or two judges. Frequent disqualification would mean more visiting judges, which in turn would mean more costs.

Relying on caps to campaign contributions is also insufficient. Plaintiffs are certainly correct that contribution limits are important to impartiality, as they prevent large contribution that may, or could be perceived as, buying influence. *Suster v. Marshall*, 951 F. Supp. 693, 698 (N.D. Ohio 1996). But giving limits are only part of the solution in preserving impartiality, not the entire solution. *Cf. Bartlett*, 168 F.3d at 715 (recognizing that compelling state interests are not limited to "corruption or appearance of corruption that result from large contributions"). Even with contribution caps, campaign activities such as direct personal solicitation and partisan endorsements place impartiality and its appearance at risk. Moreover, contribution limits do not address the negative effects, particularly on public perception, that would result from a never-ending campaign solicitation cycle. The limitations within Rules 4.1 and 4.4, on the other hand, protect the reality and appearance of impartiality from these unique dangers, while still

permitting judicial candidates many alternative/effective means of First Amendment expression.

## II.    The balance of harms weighs against a preliminary injunction.

Although Plaintiffs' improbability of success should resolve this appeal, the balance of harms also weighs against any preliminary relief in this case. After conducting this balance, the district court determined that "the public interests would not be served by the issuance of an injunction." (Opinion & Order, Doc. 23, PageID# 351.) "Absent a clear error of fact or an erroneous legal conclusion, the district court's weighing and balancing of the equities is overruled only in the rarest of cases." *FirstEnergy Solutions Corp. v. Flerick*, 521 F. App'x 521, 525 (6th Cir. 2013) (internal quotations omitted).

The district court's balancing in this case was correct. First and foremost, because the Ohio Code of Judicial Conduct satisfies First Amendment requirements, Plaintiffs will not suffer harm if relief is denied. The Code imposes minimal, and narrowly tailored, limitations on judicial candidates. Importantly, neither Plaintiffs nor any other person is being denied the ability to run for judicial office. Nor is any person prohibited from effectively expressing his or her viewpoints and/or qualifications for a judgeship.

The public interest, however, will be harmed if an injunction is granted. Once again, it is well settled that Ohio has compelling interests in the reality and

appearance of an impartial judiciary.  The public also has a compelling interest in this impartial judiciary.  The relief Plaintiffs request would disrupt the safeguards Ohio has enacted to protect these interests, and increase the risk of actual and perceived impartiality.  Plaintiffs are correct that Ohio law presumes (for the purpose of disqualification proceedings) that judges will be able to set aside their own subjective interests and impartially apply the law.  *See In re Disqualification of Bryant*, 117 Ohio St. 3d 1251, 1252 (Ohio 2006).  But part of the reason why such a presumption is appropriate is because Ohio limits the type of behavior most likely to breed partiality.  Moreover, on a broader policy level, the presumption of an Ohio court (in considering disqualification) is not what is most important; rather, it is the presumption and perception of the public at large.

Finally, in evaluating potential harms, the Court should recognize that Plaintiffs are seeking to create an unequal judicial election system.  Plaintiffs request a system that would allow Mr. Platt to personally solicit money from contributors, make speeches on behalf of a candidate or political party, endorse or oppose a candidate for another political office, and raise money as long as he wants, while prohibiting his opponent (assuming it is an incumbent judge) from doing the same.  The district court was correct that such "[r]estrictions need to be all in or all out."  (Opinion & Order, Doc. 23, PageID# 351.)  Because the

regulations in this case strike a careful and appropriate balance between competing interests, they should be all in.

## III. Eleventh Amendment bars Plaintiffs' claims against the Supreme Court of Ohio as well as the Board of Commissioners on Grievances and Discipline.

Regardless of other considerations, the relief Plaintiffs seek is also inappropriate (in part) because they bring claims against improper Defendants. Specifically, Plaintiffs bring their claims against two Ohio entities: the Supreme Court of Ohio and the Board of Commissioners on Grievances and Discipline. (*See* Compl., Doc. 1, PageID# 8-9.)    These claims are barred by Eleventh Amendment immunity, and, therefore, the Court should not grant any relief against these Defendants.

Where a state has not waived its immunity, the Eleventh Amendment acts as a jurisdictional bar to a federal court lawsuit against a state. *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992).  "The State of Ohio has not waived its eleventh amendment immunity . . . [and] Congress did not disturb the states' eleventh amendment immunity when it passed § 1983."  *Id.*  "Eleventh Amendment immunity bars all suits, whether for injunctive or monetary relief, against the state and its departments."  *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 152 n.2 (6th Cir. 1995) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984)).

Here, because the Supreme Court of Ohio and the Board of Commissioners on Grievances and Discipline are both Ohio entities, the Eleventh Amendment bars Plaintiffs' claims against these Defendants. *See Metz v. Supreme Court of Ohio*, 46 F. App'x 228, 236-37 (6th Cir. 2002) (applying Eleventh Amendment immunity to claims against the Supreme Court of Ohio).

## IV.    The Court should not consider Plaintiffs' request for permanent relief at this preliminary stage.

On a final note, the Court should decline Plaintiffs' invitation to convert this interlocutory appeal (regarding a denial of preliminary relief) into a means of granting a permanent injunction. (*See* Pls.' Br. 51-52.) Even assuming that the Court disagrees with the positions outlined above, Defendants should receive an opportunity to evaluate this Courts' decision and, if necessary, further develop the record on remand.

This Court has specifically cautioned that "[a]n appellate court in reviewing the propriety of a preliminary injunction should refrain from the unnecessary comment on the evidence or review of the merits of the case since the case has yet to be heard in full on the merits." *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., Inc.*, 753 F.2d 1354, 1356 (6th Cir. 1985). None of the authority Plaintiffs cite requires otherwise. For example, in *Seigel v. LePore*, 234 F. 3d 1163 (11th Cir. 2000), the Eleventh Circuit "decline[d] to convert [an] appeal of a denial of a preliminary injunction into a final hearing on the merits of [] claims" because

56

the plaintiffs' arguments "depend[ed] upon the development of a complete evidentiary record." 234 F.3d at 1171 n.4. Moreover, rather than a grant of permanent relief, the Seventh Circuit's decision in *Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388 (7th Cir. 1992) actually involved a situation where the moving party had completely failed to meet the requirements for injunctive relief. *See* 958 F.2d at 1400.

Even presuming preliminary relief is proper (and it is not), this Court should remand for further proceedings. This matter comes before the Court in light of Plaintiffs' combined request for emergency and preliminary relief. In this procedural context, the parties briefed the issues and a hearing was held within roughly two months of the Complaint. Moreover, many of Plaintiffs' arguments rest on the notion that Defendants have not produced enough evidence to justify their regulations. Given the well-established nature of Ohio's compelling interests, Defendants have demonstrated that the Ohio Code of Judicial Conduct is constitutional. *See Nixon*, 528 U.S. at 391 ("The quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised."). But if this Court disagrees, Defendants should at least receive a chance to develop the record before the possibility of permanent relief. If anything, the only permanent decision that is appropriate at this stage is a complete denial of injunctive relief.

57

## CONCLUSION

For these reasons, the Court should affirm the district court's denial of Plaintiffs' request for a temporary restraining order and preliminary injunction.

**Respectfully submitted,**

**MICHAEL DeWINE**
**Ohio Attorney General**

*/s/ Bridget E. Coontz*
**BRIDGET E. COONTZ (0072919)**
**DARLENE FAWKES PETTIT (0081397)**
**ZACHERY P. KELLER (0086930)**
Assistant Attorneys General
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
T: 614-466-2872; F: 614-728-7592
bridget.coontz@ohioattorneygeneral.gov
darlene.pettit@ohioattorneygeneral.gov
zachery.keller@ohioattorneygeneral.gov

*Counsel for Board of Commissioners on Grievances and Discipline of the Ohio Supreme Court*

58

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and 6 Cir. R. 32(a), the undersigned certifies that this brief complies with the type-volume limitation of Rule 32(a)(7)(B). As measured by the word count provided by Microsoft Word 2010, the pertinent parts of this brief contains <u>13,337</u> words in Times New Roman 14 point font.

*s/ Bridget E. Coontz*
**BRIDGET E. COONTZ (0072919)**
**Assistant Attorney General**

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of April, 2014, the foregoing Brief was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by e-mail or facsimile upon all parties for whom counsel has not yet entered an appearance and upon all counsel who have not entered their appearance via the electronic system.

*/s/ Bridget E. Coontz*
**BRIDGET E. COONTZ (0072919)**
**Assistant Attorney General**

## DESIGNATION OF DISTRICT COURT RECORD

Defendants-Appellees, pursuant to Sixth Circuit Rule 30(g), designate the

following filings from the district court's electronic record:

| Date Filed | Doc. No., PageID# | Docket Text |
|---|---|---|
| 6/20/2013 | Doc. 1, 1-32 | Verified Complaint |
| 6/20/2013 | Doc. 2, 58-61 | Pls.' Mot. for TRO & Prel. Inj. |
| 6/20/2013 | Doc. 2-1, 62-111 | Mem. Supp. of Pls.' Mot. for TRO & Prel. Inj. |
| 7/19/2013 | Doc. 12, 151-168 | Defs.' Mem. Opp'n to Mot. for TRO & Prel. Inj. |
| 8/7/2013 | Doc. 13, 169-183 | Reply Mem. Supp. of Mot. for TRO & Prel. Inj. |
| 8/19/2013 | Doc. 15, 220-221 | Defs.' Am. Notice of Filing of Exhibits |
| 8/19/2013 | Doc. 15-1, 222 | Defendants' Exhibit List |
| 8/19/2013 | Doc. No. 15-2, 223-255 | Defendants' Exhibits |
| 8/19/2013 | Doc. 16, 256-257 | Plaintiffs' Notice of Filing Exhibits |
| 8/19/2013 | Doc. 16-1 thru 16-9, 258-272 | Plaintiffs' Exhibits |
| 9/5/2013 | Doc. 19, 275-283 | Answer of Defendants |
| 9/13/2013 | Doc. 20, 284-335 | Transcript of 8/21/2013 Proceedings |
| 1/6/2014 | Doc. 23, 340-351 | Opinion and Order |
| 1/6/2014 | Doc. 24, 352 | Notice of Appeal |

*/s/ Bridget E. Coontz*
**BRIDGET E. COONTZ (0072919)**
**Assistant Attorney General**